## RIO GRANDE LUMBER CO. v. DARKE et al.

No. 3051. Decided July 28, 1917. (167 Pac. 241.)

1. CONSTITUTIONAL LAW—VALIDITY OF STATUTES. The court will not declare a statute unconstitutional and void because of unjust and oppressive provisions, or because it is supposed to violate the natural, social, or political rights of the citizen, unless such injustice is prohibited or the rights are guaranteed by the Constitution. (Page 119.)

2. CONSTITUTIONAL LAW—JUDICIAL FUNCTIONS—POLICY OF EXPEDIENCY OF STATUTE. In construing a statute when its validity is attacked on constitutional grounds, the courts will not consider questions of policy or expediency. (Page 119.)

3. CONSTITUTIONAL LAW—LEGISLATIVE POWERS. Except where the Constitution has imposed limits upon the legislative power, it is absolute, whether it operates according to natural justice or not. (Page 119.)

4. CONSTITUTIONAL LAW—PRESUMPTIONS IN FAVOR OF CONSTITUTIONALITY. All reasonable doubts as to the constitutionality of a statute must be resolved in its favor.[1] (Page 119.)

5. CONSTITUTIONAL LAW—MECHANICS' LIENS 313—DUE PROCESS OF LAW—CONTRACTORS' BONDS. Laws 1915, c. 91, requiring the owner of land desiring to make a contract for construction of a building for a price exceeding $500 to obtain a bond payable to the owner in a sum equal to the contract price conditioned for faithful performance

---

[1] *State ex rel. Breeden* v. *Lewis,* 26 Utah, 120, 72 Pac. 388; *Young* v. *Salt Lake City,* 24 Utah, 321, 67 Pac. 1066; *State ex rel. U. of U.* v. *Candland,* 36 Utah, 406, 104 Pac. 285, 24 L. R. A. (N. S.) 1260, 140 Am. St. Rep. 834.

of the contract, and payment of accounts for labor and material, is not unconstitutional as depriving the landowner of due process of law. (Page 122.)

Appeal from District Court, Third District; *Hon. M. L. Ritchie*, Judge.

Action by Rio Grande Lumber Company against E. W. Darke and others.

Judgment for plaintiff. Defendants appeal.

AFFIRMED.

*Richards, Hart & VanDam* for appellant.

*James Ingebretsen* for respondent.

THURMAN, J.

Appellants, by this appeal, challenge the constitutionality of an act of the Legislature "relating to the performance of building contracts." Chapter 91, Sess. Laws 1915. For the reason that the constitutionality of the act is brought in question the case assumes an importance it otherwise would not attain. The act, in substance, provides that any person making a contract for the construction of a building or structure on his land, for a price exceeding $500, shall obtain from the contractor a good and sufficient bond with sureties payable to the owner for the benefit of himself and any parties interested, in a sum equal to the contract price conditioned for the faithful performance of the contract and the payment of accounts for labor and material used in the structure. The statute further provides that any person furnishing labor or material has a direct right of action against the sureties for the amount due, and further provides that a failure on the part of the owner to procure said bond renders him liable for the payment of said obligations. Other provisions of the statute are not material to this opinion.

The complaint of the plaintiff, which is brought under the provisions of the act, in substance, states: That plaintiff is a corporation; that defendant E. W. Darke is and was a gen-

eral contractor in Salt Lake City; that on the 31st day of
October, 1915, defendant Webb and wife entered into a con-
tract with Darke by which Darke was to construct a building
for them on their land situated in Salt Lake City for a sum
not exceeding $500; that Webb and wife did not obtain from
Darke a bond for the benefit of the owners, Webb and wife,
and of other parties interested in any manner, or at all; that
defendant Darke was insolvent, and depended for necessary
labor and materials upon such credit as he might obtain from
laborers and materialmen upon their reliance of right to a
mechanic's lien and a bond conditioned for the payment of
their accounts; that defendants Webb and wife made no in-
quiries concerning the solvency and responsibility of Darke,
and each of them knew of his insolvency and irresponsibility;
that plaintiff extended credit to defendant Darke and deliv-
ered materials to him, believing that Webb and wife had
either procured a bond, as provided in the act, or that they
would themselves be responsible for the value of materials
furnished by plaintiff; that the contract price for construct-
ing said building, stipulated for between the defendants, if
devoted entirely to the payment of labor and materials, would
have paid said accounts in full; that said building could have
been erected for the price stipulated, leaving a profit to the
contractor; that Webb and wife, during the progress of the
work, paid Darke a sum in excess of the amount due plaintiff,
but took no precautions to have Darke pay any part of plain-
tiff's account, and Darke appropriated all of it to his own use;
that thereafter Darke defaulted in the performance of his
contract, leaving the building unfinished, and Webb and wife
were compelled to complete it; that by reason of Webb and
wife failing to procure a bond from Darke, as provided by the
statute, they were unable to compel Darke, or his sureties, to
complete the contract; that by reason of the foregoing condi-
tions plaintiff has no means of collecting its accounts, except
from the defendants Webb and wife. Then follows a state-
ment of materials furnished, with the price thereof and credits
allowed, leaving a balance due plaintiff of $479.45, for which
plaintiff prays judgment, with interest and costs. To this

complaint defendants Webb and wife filed and served a general demurrer, which was overruled by the court, and, upon their refusal to further plead, judgment was entered against all of the defendants.

Defendants Webb and wife appeal to this court and assign as error the overruling of the demurrer and the entry of judgment thereon. The point of appellant's demurrer, as appears from their brief, is that the legislative act in question is in contravention of article 1, section 7, of the state Constitution, which reads as follows:

"No person shall be deprived of life, liberty or property, without due process of law."

It is likewise urged that the statute conflicts with the Fourteenth Amendment to the Constitution of the United States, which provides inter alia:

"Nor shall any state deprive any person of life, liberty or property, without due process of law; nor deny to any person within its jurisdiction the equal protection of the laws."

Appellants characterize the act of the Legislature as vicious, and charge that it deprives the owner of his property by interfering with its use, and that it is an unnecessary and unreasonable restriction on the power to contract. To challenge the constitutionality of a solemn and deliberate act of legislation by the lawmaking power of a sovereign state always presents a serious question, however trifling or insignificant may be the amount involved in the particular case. The citizens of a free government are justly jealous of their constitutional rights and privileges, and this should be attributed to them as a virtue rather than a fault. It keeps them on the alert and inspires them with courage and determination in their efforts to resist the aggressions of arbitrary power. It is just as obligatory upon the citizen to resist encroachments upon his rights and liberties guaranteed by the Constitution as it is for him to uphold and maintain its integrity. It is therefore to be expected that whenever one of the co-ordinate departments of the government impinges upon the prerogatives of another, or transcends the limits of its constitutional authority, the citizen who is immediately and directly affected will resist

the encroachment and challenge the authority of the department thus transcending its power. Not only will he do so when the department actually transcends its power, but oftentimes, as the annals of jurisprudence show, he does so before it has reached that point, if it approaches near the border line. No fault can be found with this prudent watchfulness on the part of the citizen; indeed, it oftentimes happens that every other citizen of the commonwealth becomes deeply indebted to him whose watchfulness and courage prompt him to contest the authority for the exercise of the disputed power. When such questions arise in judicial proceedings it is the duty of the court to deal with them in the light of those fundamental rules of construction which are recognized and established, and which are themselves as rigid and binding as the constitutional provision it is called upon to determine. As stated by one of the most eminent exponents of constitutional law:

"It must be evident to any one that the power to declare a legislative enactment void is one which the judge, conscious of the fallibility of the human judgment, will shrink from exercising in any case where he can conscientiously and with due regard to duty and official oath decline the responsibility. The legislative and judicial are co-ordinate departments of the government, of equal dignity; each is alike supreme in the exercise of its proper functions, and cannot directly or indirectly, while acting within the limits of its authority, be subjected to the control or supervision of the other, without an unwarrantable assumption by that other of power which, by the Constitution, is not conferred upon it." Cooley's Constitutional Limitations (6th Ed.) 192.

Continuing the subject on the next page, the same author says:

"The task is therefore a delicate one, and only to be entered upon with reluctance and hesitation. It is a solemn act in any case to declare that that body of men to whom the people have committed the sovereign function of making the laws for the commonwealth have deliberately disregarded the limitations imposed upon this delegated authority, and usurped power which the people have been careful to withhold."

These considerations, as before stated, have led to the establishment of certain positive and fixed rules of construction by which the courts are bound in determining whether or not a particular statute is unconstitutional.

One of the fundamental rules to be applied in determining a question of this kind is that a court will not declare a statute

unconstitutional and void solely on the ground of unjust and oppressive provisions, or because it is supposed to violate the natural, social, or political rights of the citizen, unless it can be shown that such injustice is prohibited or such rights are guaranteed or protected by the Constitution. Same author, p. 197. See, also, R. C. L. vol. 6, pp. 104-106, inclusive.

Furthermore, it is a fundamental rule in construing a statute when its validity is challenged on constitutional grounds that the courts will not consider mere questions of policy or expediency. These are matters of legislation, and belong to the legislative department of the government. R. C. L. pp. 104-111, inclusive; Cooley's Constitutional Limitations, pp. 200-203, inclusive. For the judiciary to dictate in matters of policy and expediency and seek to nullify acts of the lawmaking body, because it conceives that such acts are impolitic or unnecessary, would.be just as flagrant a violation of the Constitution as would be an act of the Legislature which would deprive a person of life, liberty, or property without due process of law.

Another rule of construction in cases of this kind must not be overlooked, and that is that except where the Constitution, either federal or state, has imposed limits upon the legislative power, it must be considered as practically absolute, whether it operate according to natural justice or not, in any particular case. Courts are not the guardians of the rights of the people of the state, except as those rights are secured by some constitutional provision which comes within judicial cognizance.

These considerations finally lead up to another rule of construction where the constitutional validity of a statute is involved which is equally binding upon the courts with the other rules we have mentioned, and that is, that after fully and fairly considering the powers of the legislative body and the limitations of its power under the Constitution, if there is a reasonable doubt in the mind of the court, that doubt must be cast in favor of the validity of the act. Cooley's Constitutional Limitations, pp. 216, 217. Mr. Jus-

tice Washington, of the Supreme Court of the United States, upon this point, uses the following language:

''But if I could rest my opinion in favor of the constitutionality of the law on which the question arises, on no other ground than this doubt so felt and acknowledged, that alone would, in my estimation, be a satisfactory vindication of it. It is but a decent respect due to the wisdom, the integrity, and the patriotism of the legislative body by which any law is passed to presume in favor of its validity until its violation of the Constitution is proved beyond all reasonable doubt. That has always been the language of this court when that subject has called for its decision.''

This exposition of the rule was made in one of the most important cases that has arisen under the federal Constitution. *Ogden* v. *Saunders,* 12 Wheat. 213, 6 L. Ed. 606; R. C. L. 97-104, inclusive. See, also, *State ex rel. Breeden* v. *Lewis,* 26 Utah, 120, 72 Pac. 388; *Young* v. *Salt Lake City,* 24 Utah, 321, 67 Pac. 1066; *State ex rel. U. of U.* v. *Candland,* 36 Utah, 406, 104 Pac. 285, 24 L. R. A. (N. S.) 1260, 140 Am. St. Rep. 834. Any other rule than this would be inconsistent and untenable from every point of view, and would be a reflection upon the wisdom and motives, and an interference with the prerogatives, of an independent co-ordinate department. These rules are fundamental and elementary. It is perhaps unnecessary to cite authority in their support.

Appellants, in their contention against the validity of the statute in question, rely for authority upon decisions of the California Supreme Court construing statutes passed by the Legislature of that state. Appellants have quoted in their brief the statute which was declared unconstitutional, for the purpose, we assume, of showing the similarity to the Utah statute now under review and to give force and effect to the decisions upon which they rely. For a clearer understanding of this opinion, and in fairness to appellants, who rely implicitly on the decisions of the courts of that state construing the California statute, we here briefly state its substance. It provides that every building contract when filed shall be accompanied by a good and sufficient bond for the security of all persons who perform labor or furnish materials to the contractor. Any of such persons have a right of action on the bond. Any failure to furnish such bond renders both the

owner and contractor liable. Immaterial provisions are omitted.

The leading case cited by appellants is *Gibbs* v. *Tally,* 133 Cal. 373, 65 Pac. 970, 60 L. R. A. 815. The action was by the assignee of certain persons, who had performed labor and furnished materials, against the defendant, owner of the property, for failure to cause a bond to be filed in accordance with the statute. A bond was filed, but was defective in form and treated as no bond at all, so that the form of action and the grounds alleged are sufficiently analogous to the case at bar to make it a case in point as far as the nature of the action is concerned. In reviewing the statute and criticizing it, at page 375 of 133 Cal., at page 971 of 65 Pac., 60 L. R. A. 815, the court, by Mr. Justice Temple, said:

"The statute does not say who shall cause this bond to be executed, nor to whom it shall, in form, be made payable. It does not undertake that the contractor shall faithfully perform his contract. In short, there is in it nothing which can be of advantage to the owner in any possible event."

By an examination of the entire opinion it will be seen that the points made in the above quotation constitute the principal objections upon which the statute was declared to be unconstitutional. We think we are not unfair at this point if we remark that no portion of the above criticism can be justly applied to the Utah statute in even the slightest particular, for, in the particulars mentioned, the Utah statute is unlike the California statute in every respect. The Utah statute *does* say who shall cause the bond to be executed, namely, the owner of the land shall procure it from the contractor; it *does* say to whom it shall be made payable, namely, the owner of the land, for the benefit of the owner or any party interested; it *does* provide that the bond shall be conditioned for the faithful performance of the contract and for the payment of the accounts contracted for material furnished and labor performed; and, finally, it *does* provide for something which can be of advantage to the owner. If the owners, appellants in this case, had procured a bond from the contractor Darke, payable to the appellants for their benefit and the benefit of others that might be interested, as required by the statute, the

appellants would have been fully protected against the defaulting contractor, and everybody concerned would have likewise been protected. So that, so much of the criticism of the California court as we have quoted above—and we have quoted its strongest objections—is without application so far as the Utah statute and the case at bar are concerned. If the learned justice who wrote the opinion from which we have quoted had been criticising the Utah statute instead of the statute of his own state, his criticism would, of necessity, if made at all, have been entirely different because of the striking dissimilarity of the statutes in nearly every essential particular. His criticism of that statute may have been entirely just and proper, and the statute may have been invalid and obnoxious to the objections pointed out, but it does not follow that another statute not containing these objectionable features might not be unassailable from a constitutional point of view.

The aim and purpose of our mechanic's lien law manifestly has been to protect, at all hazards, those who perform the labor and furnish the materials which enter into the construction of a building or other improvement. The result has been that the owner of the premises, at whose instance and for whose benefit the improvement is made, has been the one most likely to suffer loss. He pays at his peril the original contractor, who generally needs it and demands it as the work progresses. If he does not reserve enough of the fund in his own hands to pay for the labor of subcontractors and employees, and the price of materials, he incurs the risk of having to pay over again for at least a part of these items. The original contractor, as in this case, often defaults, with his compensation overdrawn and with subcontractors, employees, and materialmen unpaid. The owner of the premises suffers in consequence because his property is pledged for the payment of these obligations. This case is only one of many. In view of these facts and conditions, more or less prevalent, owing to the vast amount of building and improvement of various kinds going on in the communities of the state, is it manifestly unreasonable, harsh, or oppressive, or in contravention of any provision of the Constitution, for the

Legislature to require by law, as it has done in this case, that every person who contemplates the erection of a building or structure, such as are mentioned in the statute, shall exact of his contractor, the person to whom he lets the work, a good and sufficient bond for the performance of his contract, the payment of laborers and materialmen, and, upon his failure to procure such bond, that he himself shall pay the unpaid bills and accounts? Can it be said that this is even an unreasonable regulation, much less a violation of the Constitution? The purpose and object is for the protection of all parties concerned, except the original contractor, who, as experience has demonstrated, has less need of protection than any one else concerned in the business. It has not been made to appear to our satisfaction that the statute, requiring a bond in case of this kind, deprives any one of "his property without due process of law by interfering with its use," or that it is an "unnecessary or unreasonable restriction on the power to contract." Besides, as we have shown, the fact that legislation may be unnecessary, unreasonable, or even harsh will not justify this court in declaring it unconstitutional unless the provision violated is clearly pointed out. It certainly does not deprive the owner of the premises of his property, but is rather for his protection, as we believe we have shown.

The decision of the California court, above referred to, was approved by later decisions. *Shaughnessy* v. *American Surety Co.*, 138 Cal. 543, 69 Pac. 250, 71 Pac. 701; *Snell* v. *Bradbury*, 139 Cal. 379, 73 Pac. 150; *Montague* v. *Furness*, 145 Cal. 205, 78 Pac. 640. All of these cases are cited in appellants' brief and relied on in support of their contention. We do not deem it necessary to review them at length, in view of our expressed opinion concerning the leading case and the striking dissimilarity between the statutes of the two states.

But whatever may be the just and proper view to take of the California statute above referred to and the line of decisions holding it to be unconstitutional, a more recent decision by the Supreme Court of that state construing a later statute, and holding it to be constitutional, is somewhat illuminating upon the question presented before the court. As sug-

gested by respondent in its brief, our statute evidently was not modeled after either the old or the new statute of California, but in its essential features corresponds with the later statute. That statute prescribes who shall furnish the bond, and makes it payable to the owner as well as to the laborers and material-men. It is conditioned for the faithful performance of the contract as well as the payment of accounts for labor and material. It limits the bond to the contract price, and for the payment only of labor and materials used in the building or structure. If the owner neglects or fails to obtain the bond from the contractor, he becomes directly liable to those who perform the work and furnish the materials. In all these respects the statute, as far as the bond feature is concerned, is substantially the same as ours. The California court has construed this statute after a vigorous contest challenging its constitutionality, and held it to be constitutional. *Roystone Co. v. Darling*, 171 Cal. 526, 154 Pac. 15. The act was incorporated into the mechanic's lien law of the state and made part of it. Some special virtue is claimed for it by appellants on that account, but we are constrained to agree with respondent that this contention is without merit. If the principle of exacting a bond in such cases is wrong and in violation of the Constitution, it could not be purged of its illegality by incorporating it into another law and making it a part thereof. The fact that the Constitution of California makes express provisions for a mechanic's lien law does not alter the case. The Utah mechanic's lien law is not made in pursuance of any express requirement of the Constitution; but the law may, nevertheless, be constitutional because the Constitution does not prohibit it. The statute of Utah now under review is auxiliary to our mechanic's lien law, and just as much in aid of it as if it had been made a part of it and incorporated in the same chapter.

The *Roystone Case*, supra, is one in which suit was brought for foreclosure of mechanic's liens, and the owner of the premises and the surety on the contractor's bond were made defendants. Judgment was found against defendants, but the surety only appealed. The surety urged the objection that the

statute was unconstitutional, relying upon decisions in the Gibbs and other cases heretofore referred to. Substantially the same objections were made by appellants as were made in the Gibbs and subsequent cases. After stating some fundamental differences and objectionable provisions that had existed in previous statutes, at page 540 of 171 Cal., at page 21 of 154 Pac., the court, speaking of the later statute, says:

"The law of 1911 here involved does not deprive the owner of the right to contract for the improvement of his property. It allows him to contract freely for such improvement and upon such terms as he may deem for his best interests. All it exacts from him, as a condition of such exemption from liability, and in order to make his contract effective, is that he shall provide a reasonable security for the constitutional lien given for labor and materials furnished to his contractor. It is not an unreasonable burden. It is one which we think the people have the power to impose and which we believe to be within the scope of the constitutional mandate in the section conferring such liens, and of the police power."

The court then cites the cases under the old law holding it to be unconstitutional, and proceeds to a more detailed statement of the provisions of the old law and the facts involved in the Gibbs case in which the unconstitutionality of the statute was determined, after which, on the same page, the court says:

"The facts involved in the case have no necessary bearing upon the question whether or not the Legislature could, in any case, require the contractor to file a bond for the benefit of persons having claims against him regarding the same before entering upon the work."

Again, at page 542 of 171 Cal., at page 22 of 154 Pac., the court says:

"We are unable to perceive any constitutional objection to the expedient of providing that by the execution and filing of such bond the owner may be protected against the delinquencies of his contractor while, at the same time, lien claimants are afforded a security for the payment of their claims. We therefore hold that the foregoing decisions are not applicable, and that the provision for requiring this bond is not unconstitutional or invalid."

The court, in other portions of its opinion, undertakes to distinguish the Gibbs Case from the case then under review, and unfortunately, in our judgment, assigns confusing reasons for an otherwise good opinion. It could, with perfect

consistency, have stated that the Legislature in the new law had cured the defects in the old law specifically pointed out in the Gibbs and subsequent cases, thus meeting every objection made as to the constitutionality of the act. Had it done so it would have avoided attempted explanations and distinctions having more the characteristics of an apology than of a plain, courageous statement of the obvious reasons for its opinion. The old statute of California, by implication at least, required the owner to furnish a bond to secure the payment of obligations he did not contract, and that to strangers with whom he had no contractual relations whatever. Such an act would seem to be obnoxious to the constitutional inhibition relied on. For that reason we are not disposed, as before stated, to find fault with the decision in the Gibbs Case, nor with the decisions in the other cases holding the same view. But the new statute of California, under which the Roystone Case was tried, and the Utah statute under review, obviating the objections to the old statute, simply require the owner who contemplates erecting a building or structure to require his contractor to furnish a bond to secure the contractor's debts and obligations incurred in respect to the building or other structure. If the owner neglects to take this precaution for his own safety he becomes liable for the price of the labor and materials entering into the erection of the structure, even though the amount may exceed his original contract. Hence the old statute was declared unconstitutional while the constitutionality of the new statute by the same court was upheld. The Roystone Case, although cited and distinguished by appellants, in our judgment, strongly supports the validity of the statute which is the subject of this appeal.

The mechanic's lien laws as found in most of the states are referred to by respondent by way of analogy, inasmuch as the claims of laborers and materialmen for labor and materials used in the building or improvement are, by the law, without the owner's consent, made liens upon the property improved. It is claimed that these laws are generally held to be not obnoxious to the constitutional inhibition relied on in the case at bar, and that if such laws are not obnoxious to such

constitutional inhibition there is no logical reason for holding a bond requirement unconstitutional. Without passing upon the question whether or not the ordinary mechanic's lien laws are constitutional, as that identical question is not involved, we are nevertheless forced to admit that there appears to be a strong analogy in essential particulars. The mechanic's lien laws providing for liens upon the property improved without the owner's consent, even beyond the contract price, where the owner fails to hold the fund for the payment of labor and materials, have generally, though not always, been upheld as constitutional, principally upon two grounds: (1) That the labor and materials used in the building are a direct benefit to the owner for which the property improved should be liable; (2) that he is presumed to contract with full knowledge of the law, and he has the power to protect himself against loss by safeguarding the fund necessary to pay for labor and materials. These are generally the answers made to every attack made upon the constitutionality of these laws. We are unable to see why the same answer, in principle at least, may not be made where the validity of a statute requiring a bond is brought in question. The bond, as in this case is conditioned for the faithful performance of the contract and securing the payment of laborers and materialmen. If the owner requires the contractor to procure the statutory bond, he is protected against loss. If he does not, he becomes liable to laborers and materialmen if the contractor fails to pay them, even though he may have paid the contractor in full. He has his remedy in his own hands. Under the mechanic's lien law, if he fails to hold the fund for the payment of laborers and materialmen, the same misfortune may occur. To use the epigrammatic expression of respondent's brief:

"Under the bond statute he must take care to exact the bond, and under the lien statute he must take care to hold the fund."

We are unable to find any reason for declaring the statute in question unconstitutional. Certainly, to say the least, reasonable doubts as to its unconstitutionality, after thoroughly considering the question, are such as to render it the impera-

tive duty of the court to declare the statute valid as against the objections made. It is ordered by the court that the judgment be affirmed. Respondent to recover costs.

FRICK, C. J., and McCARTY, CORFMAN, and GIDEON, JJ., concur.