CALDER BROS. COMPANY, Plaintiff and Respondent,

v.

Ross L. ANDERSON, Signs, Inc., Dunn Construction Co., Jarvis Electric Co., Michael Crowley, Michael Crowley dba Star Palace, Star Palace, Inc., et al., Defendants and Appellants.

JARVIS & SONS ELECTRIC CO., INC., Plaintiff and Appellant,

v.

Ross L. ANDERSON and Brent Weeks, et al., Defendants.

DUNN CONSTRUCTION CO., and Royden, Inc., Plaintiffs and Appellants,

v.

Ross L. ANDERSON and Allison Anderson, Brent C. Weeks and Western Star Palace, Inc., Defendants.

Nos. 17449, 17458 and 17459.

Supreme Court of Utah.

Aug. 24, 1982.

Robert L. Stolebarger, of McDougal, Haley, Dahl & Stolebarger, Salt Lake City, for Star Palace.

John C. Backlund, of Young, Backlund, Harris & Carter, Provo, for Dunn Const.

Dallas H. Young, Jr., Brent D. Young and Jerry L. Reynolds, of Ivie & Young, Provo, for plaintiff and respondent.

STEWART, Justice:

In case No. 17459 Calder Bros. Company (Calder Bros.) brought an action to foreclose a $490,000 purchase money mortgage against real property sold to Ross Anderson. This action was consolidated in the district court with two other actions brought by independent contractors to foreclose their mechanics' liens against the same property (Nos. 17449 and 17458). The judgment in favor of Calder Bros. in No. 17459 is appealed by defendants Star Palace, Inc., Michael Crowley, and Signs, Inc., on the grounds that the lower court erred in entering default judgments against them, in denying Signs' motion to substitute Micro-Investment as the real party in interest, and in denying Star Palace's motion to vacate an order appointing a receiver. Jarvis & Sons Electric Co., Inc. (Jarvis), Dunn Construction Co. (Dunn), and Royden, Inc. (Royden), appeal the district court's judgments in Nos. 17449 and 17458, establishing Calder Bros.' purchase money mortgage priority over their mechanics' liens.

I. The Mortgage and the Mechanics' Liens (Nos. 17449 and 17458)

On June 14, 1978, Calder Bros. conveyed the real property commonly known as the Star Palace to Ross Anderson by warranty deed. On the same day, Anderson executed and delivered a purchase money mortgage to Calder Bros. The mortgage was not recorded until June 27, 1978. Shortly after the mortgage was recorded, a building permit was obtained from Provo City to make improvements on the property based on a submitted set of plans.

After the deed and mortgage were executed but before the mortgage was recorded, Anderson hired two young men on an hourly basis to help cut weeds, cut down two trees, and grout cracks in the building. They were paid $18.95 for their labor. In addition, a painter was hired to paint the building with paint supplied by an associate of Anderson. He was paid $850. No mechanics' liens were filed as a result of any of the above described work.

After Calder Bros.' mortgage was recorded, Anderson hired Jarvis to perform electrical work, Dunn to resurface the parking area around the building, and Royden to furnish labor and materials. On this appeal, they claim that the trial court erred in holding that their mechanics' liens were subsequent in priority to the purchase money mortgage and that their priority should be established as of the commencement of the maintenance work which occurred prior to the recording of the mortgage.

Utah Code Ann., 1953, § 38–1–5 provides the guidelines for determining the priority of the liens in this case. That section provides:

Priority—Over other encumbrances.— The liens herein provided for shall relate back to, and take effect as of, the time of the commencement to do work or furnish materials on the ground for the structure or improvement, and shall have priority over any lien, mortgage or other encumbrance which may have attached subsequently to the time when the building, improvement or structure was commenced, work begun, or first material furnished on the ground; also over any lien, mortgage or other encumbrance of which the lien holder had no notice and which was unrecorded at the time the building, structure or improvement was commenced, work begun, or first material furnished on the ground.

◼ The purpose of the mechanics' lien act is remedial in nature and seeks to provide protection to laborers and materialmen who have added directly to the value of the property of another by their materials or labor. *First of Denver Mortgage Investors v. Zundel and Assoc.*, Utah, 600 P.2d 521 (1979); *Rio Grande Lumber Co. v. Darke*, 50 Utah 114, 167 P. 241 (1917). To accomplish that purpose, the phrase "commencement to do work," as used in the mechanics' lien statute, is construed in favor of lien claimants. *Bankers Trust Co. v. El Paso Pre-Cast Co.*, 192 Colo. 468, 560 P.2d 457 (1977). See also *First of Denver Mortgage Investors, supra.* Materialmen's and mechanics' liens resulting from materials furnished or labor performed relate back to and attach as of the date of the commencement of the first work on the improvement or structure involved. *First of Denver Mortgage Investors, supra.*

◼ For one contractor's lien to relate back to the commencement of work or supplying of materials by another contractor however, both contractors' projects must have been performed in connection with what is essentially a single project performed under a common plan prosecuted with reasonable promptness and without material abandonment. *See, e.g., Miller Electric Co. of Miami, Inc. v. Sweeny*, Fla. App., 199 So.2d 734 (1967); *National Lumber Co. v. Farmer & Son, Inc.*, 251 Minn. 100, 87 N.W.2d 32 (1957); *Fryman v. McGhee*, 108 Ohio App. 501, 163 N.E.2d 63 (1958). Ordinary maintenance or cleanup work does not serve as a basis for "tacking" so as to fix an earlier lien date under § 38–1–5 for labor and materials supplied. 57 C.J.S. *Mechanics Liens* § 179 (1948).

◼ The building permit, applied for June 20, 1978, a date preceding the recording of Calder Bros.' mortgage, was issued June 28, 1978, a date subsequent to the recording. Drawings made in November, 1977, and later submitted with the application for a building permit, disclosed alterations principally related to the interior of the building. The only exterior improvement shown is a drawing of a building with a peaked roof to replace the existing flat roof.

Nothing in the plans suggested that the painting and maintenance work was part of an improvement project envisioned by the new owners. The work performed prior to the recording of Calder Bros.' mortgage included painting the building exterior, cutting down two trees, clearing weeds, and placing grout in the building. At no point up to and including the time Calder Bros.' mortgage was recorded, was it evident from the inspection of the premises that an improvement had been commenced.[1] No materials were delivered to the premises prior to the recording of Calder Bros.' mortgage.

The trial court found that the cleanup and painting were insubstantial and constituted ordinary and necessary maintenance

---

1. Generally, the presence of building materials upon the land or other visible evidence of work performed provides notice to any interested party that work has commenced. *Western Mortgage Loan Corp. v. Cottonwood Co.*, 18 Utah 2d 409, 424 P.2d 437 (1967); *H.B. Deal Construction Co. v. Labor Discount Center, Inc.*, Mo., 418 S.W.2d 940 (1967). *Compare First of Denver Mortgage Investors v. Zundel and Assoc.*, Utah, 600 P.2d 521 (1979).

rather than the commencement of an improvement to the building within the meaning of the mechanics' lien statute. In addition, the court found that improvements to the exterior of the building subsequent to the recording of Calder Bros.' mortgage rendered the painting "to a large measure valueless." Therefore, it follows that Jarvis & Sons, Dunn, and Royden could not establish the date of their liens as of the commencement of the general maintenance and cleanup work.

In sum, there is ample support in the record to support the trial court's findings that the liens in favor of Jarvis, Dunn, and Royden did not attach prior to the Calder Bros.' mortgage and do not have priority over the mortgage.

## II. Default Judgments and Receivership (No. 17459)

Calder Bros. commenced an action on August 21, 1979, against Anderson to foreclose the purchase money mortgage. Signs, Inc., another party with an interest in the property, and Michael Crowley, acting for and on behalf of Star Palace, the party to whom Anderson assigned his interest in the property earlier that year, were also named defendants.[2] Star Palace, however, was not initially made a party to the action. On October 15, 1979, Calder Bros. served an amended complaint naming Star Palace a defendant. On October 31, 1979, two weeks after an involuntary petition in bankruptcy was filed against Anderson in the United States Court of Bankruptcy for Idaho, a default judgment was entered against Michael Crowley in the foreclosure action.[3] Approximately two months later, default judgments were entered against Star Palace and Signs.

In January, 1980, Star Palace objected to a trial setting on the ground that the proceedings against Ross Anderson had been stayed as a result of the bankruptcy proceeding. On May 29, 1980, Star Palace, Crowley and Signs moved to set aside the default judgments taken against them, and Signs moved to substitute Micro-Investment as a party in its stead. On August 14, 1980, the trial court denied these motions.

Crowley, Star Palace and Signs argue that the court erroneously entered default judgments against them. They cite the Bankruptcy Act, 11 U.S.C. § 362(a) (1979), which provides in pertinent part:

> Except as provided in subsection (b) of this section, a petition filed under section 301, 302, or 303 of this title operates as a stay, applicable to all entities, of—
>
> (1) the commencement or continuation, including the issuance or employment of process, of a judicial, administrative, or other proceeding against the debtor that was or could have been commenced before the commencement of the case under this title, or to recover a claim against the debtor that arose before the commencement of the case under this title;
>
> (2) the enforcement, against the debtor or against property of the estate, of a judgment obtained before the commencement of the case under this title;
>
> (3) any act to obtain possession of property of the estate or of property from the estate;
>
> (4) any act to create, perfect, or enforce any lien against property of the estate;
>
> (5) any act to create, perfect, or enforce against property of the debtor

---

**2.** On October 17, 1979, Signs assigned its interest in the property to Micro-Investment, an entity not a party to this action. On December 5, 1979, Micro-Investment filed an answer to the amended complaint claiming to be the real party in interest although it had not been named as a defendant and had not sought an order allowing substitution of parties or intervention.

On October 1, 1979, Crowley, again acting for and on behalf of Star Palace, apparently entered into an agreement with Anderson to re-

scind the assignment of interest in the real property.

**3.** It appears that on November 16, 1979, Crowley deeded all the interest he had in the property to Star Palace and Star Palace deeded its interest in the premises to Ross Anderson. Although the deed was not recorded, it was delivered to the trustee in bankruptcy apparently to enable the trustee to acquire jurisdiction over the Star Palace properties.

any lien to the extent that such lien secures a claim that arose before the commencement of the case under this title;

(6) any act to collect, assess, or recover a claim against the debtor that arose before the commencement of the case under this title;

■ The federal law of bankruptcy supersedes state law to the extent necessary to further the objectives of administering the estates of bankrupts. *Butner v. United States,* 440 U.S. 48, 99 S.Ct. 914, 59 L.Ed.2d 136 (1979). However, we see nothing in section 362(a) which acts to stay Calder Bros.' action against Star Palace, Signs, and Crowley. Section 362(a) may, in certain circumstances, stay judicial proceedings against not only the debtor in bankruptcy but also co-defendants when the allegations against them arise from the same factual and legal basis and are inextricably interwoven. *Federal Life Insurance Co. (Mutual) v. First Financial Group of Texas,* 3 B.R. 375 (S.D.Texas 1980). But neither the terms of the statute nor the nature of the case requires that co-defendants not file an answer. If a stay were to appear appropriate thereafter, a motion to the trial court would suffice. We do not think the action against Star Palace, Crowley and Signs was so inextricably interwoven with the bankruptcy proceedings against Anderson that the proceedings in the Calder Bros.' case had to be stayed in toto. Accordingly, the default judgments against the defendants were properly enforced.

■ Star Palace, Crowley and Signs also contend that if the default judgments are valid, the trial court erred in not setting those judgments aside. A default judg-

ment may be set aside under rule 60(b) for the following reasons: [4]

Mistakes; Inadvertence; Excusable Neglect; Newly Discovered Evidence; Fraud, Etc. On motion and upon such terms as are just, the court may in the furtherance of justice, relieve a party or his legal representative from a final judgment, order, or proceeding for the following reasons:

(1) mistake, inadvertence, surprise, or excusable neglect; . . .

(7) any other reason justifying relief from the operation of the judgment. The motion shall be made within a reasonable time and for reasons (1), (2), (3), or (4), not more than three months after the judgment, order, or proceeding was entered or taken.

Star Palace, Crowley and Signs contend that they complied with the three-month time limitation applicable to rule 60(b)(1). They argue that the default judgment did not become effective until the day the automatic stay was lifted. Since there was no stay in effect, however, the argument fails. Appellants also rely on subsection (7) of rule 60(b). A motion to set aside a judgment under that provision need only be made "within a reasonable time." Therefore, if the motion is well founded under rule 60(b)(7), it may be timely. However, rule 60(b)(7) is not available to one who should have filed under rule 60(b)(1) but did not. *See Ackerman v. United States,* 340 U.S. 193, 71 S.Ct. 209, 95 L.Ed. 207 (1950); *Klapprott v. United States,* 335 U.S. 601, 69 S.Ct. 304, 93 L.Ed. 266 (1949); 7 J. Moore & J. Lucas, Moore's Federal Practice, § 60.42 (2d ed. 1982).[5] The failure to file an answer based on a mistake of law raises a rule 60(b)(1) issue and therefore the motion to

---

**4.** An "entry of default" may be set aside under rule 55(c) "for good cause shown by the court." Once a judgment by default has been entered, however, it may be set aside only in accordance with rule 60(b).

**5.** *See Kessimakis v. Kessimakis,* Utah, 546 P.2d 888 (1976), where the Court held that a request to set aside a decree made five months after judgment was properly denied as untimely.

*But see Ney v. Harrison,* 5 Utah 2d 217, 299 P.2d 1114 (1956), where the Court upheld the trial court's discretion to regard a situation in which defendant had mistakenly believed she was fully protected by the divorce decree ordering her ex-husband to pay any real estate commission arising from the sale of an apartment as among the class of cases that rule 60(b)(7) was intended to govern.

set aside the judgment was properly denied.[6]

 Finally, it is argued that the lower court committed reversible error in denying Star Palace's motion to vacate the order appointing a receiver since it went beyond the permissible bounds of the scope of a receivership. Calder Bros.' motion to appoint a receiver to take possession of the property and to conduct the business of the tenant, Star Palace, was granted by the trial court October 4, 1979, pursuant to Rule 66, Utah Rules of Civil Procedure. The court later denied Star Palace's motion to vacate the order appointing a receiver.

Star Palace relies on *Smith v. McCullough,* 104 U.S. 25, 26 L.Ed. 637 (1881), in which the Court held that the receiver was properly appointed only as to the property covered by the mortgage. Star Palace argues that its business constitutes property not covered by the mortgage. In addition, Star Palace relies on *Keyser v. Erickson,* 61 Utah 179, 211 P. 698 (1922), which held that property may not be taken from a person in possession pursuant to a court order unless the person in possession had been accorded his day in court.

Calder Bros. responds by arguing that the issue is untimely raised since more than one month lapsed between the order denying the motion to vacate the order appointing the receiver and the notice of intent to appeal the judgment. We need not determine the timeliness of raising the issue, since, even if timely raised, Star Palace fails on the merits of its claim.

Neither *Smith v. McCullough* nor *Keyser v. Erickson* is on point. Unlike *McCullough,* the receivership in this case does not extend to more property than is involved in the underlying litigation, and unlike *Keyser,* Star Palace, the party opposing the receivership, was not a stranger to the proceeding. Not only were Michael Crowley and Michael Crowley dba Star Palace named parties in the initial complaint filed

August 21, 1979, but Star Palace was named in the order appointing a receiver filed October 4, 1979, and was a named party in the amended complaint filed October 9, 1979, one month before the trial court signed the amended order appointing a receiver on November 9, 1979.

Affirmed. Costs to respondents.

HALL, C.J., and OAKS, HOWE and DURHAM, JJ., concur.

---

6. Having upheld the default judgment, we find no merit in Signs' argument that the court erred in denying its motion to substitute Micro-Investment as Signs' transferee of interest pursuant to Rule 25, Utah Rules of Civil Procedure. The court properly denied the motion since it was filed subsequent to the default judgment.