**2015 UT App 29**

# THE UTAH COURT OF APPEALS

PENTALON CONSTRUCTION, INC.; GRANITE CONSTRUCTION COMPANY;
AND WIMMER ELECTRIC, INC.,
Plaintiffs and Appellants,

*v.*

RYMARK PROPERTIES, LLC, AND
*FEDERAL DEPOSIT INSURANCE CORPORATION*,
Defendants and *Appellee*.

Opinion
No. 20130973-CA
Filed February 5, 2015

Second District Court, Ogden Department
The Honorable Ernest W. Jones
No. 090902634

Robert F. Babcock, Jason H. Robinson, D. Scott
DeGraffenried, Michael D. Zimmerman, Troy L.
Booher, and Clemens A. Landau, Attorneys for
Appellants Pentalon Construction, Inc. and Granite
Construction Company

Dana T. Farmer, Attorney for Appellant Wimmer
Electric, Inc.

David M. Bennion and Alan S. Mouritsen,
Attorneys for Appellee Federal Deposit
Insurance Corporation

JUDGE J. FREDERIC VOROS JR. authored this Opinion, in which
JUDGE JOHN A. PEARCE concurred. JUDGE JAMES Z. DAVIS
dissented, with opinion.

VOROS, Judge:

¶1 This case concerns whether the near-complete excavation for a building's foundation constitutes commencement of work under a now-repealed provision of the Utah Mechanic's Lien Act (the Act). Under the Act, a mechanic's lien relates back to the date work commenced onsite. Therefore, if other legal requirements are met, the mechanic's lien enjoys priority over any encumbrance that attaches after the commencement of work. In this case, Pentalon Construction, Inc., had nearly completed the excavation for a building's foundation when Barnes Bank—Federal Deposit Insurance Corporation's predecessor in interest—recorded a trust deed on the property. When a dispute over priority arose, the district court ruled that Pentalon's near-complete excavation work did not constitute "commencement to do work" under the statute and therefore that FDIC's trust deed had priority. Pentalon, Granite Construction Company, and Wimmer Electric, Inc., (collectively, Claimants) appeal. We reverse and remand for further proceedings.

BACKGROUND

¶2 Rymark Properties, LLC, owned property in Ogden, Utah. It hired Pentalon as its general contractor to build an auto plaza on the property. On May 5, 2008, Pentalon filed a notice of commencement in the state construction registry. On May 8, 2008, Pentalon and its subcontractors began excavating the property. Photographs taken May 27, 2008, show geotextile fabric lining trenches that cut across the property, along with heavy machinery and mounds of dirt scattered throughout. *See infra* Exhibits A, B, & C. The day after these photographs were taken, Barnes Bank recorded its trust deed on the property. FDIC succeeded to Barnes Bank's interest.

¶3    Pentalon later sought to foreclose its mechanic's lien against Rymark, FDIC, and others (collectively, FDIC). Pentalon moved for partial summary judgment, asking the district court to rule that Pentalon's partial excavation of the property—the work it had completed before FDIC recorded its trust deed—constituted commencement to do work for purposes of the Act, and, therefore, that its lien enjoyed priority over FDIC's trust deed. The court denied Pentalon's motion. Referencing photographs of the property, the court ruled that "there is no real question of fact here" and concluded that Pentalon's excavation "is not legal commencement." FDIC then filed its own motion for summary judgment. FDIC's motion argued that because Pentalon's excavation did not constitute commencement as a matter of law, "Claimants cannot establish an essential element of their mechanics' lien foreclosure claims—i.e., that their mechanics' liens have priority over FDIC's trust deed." The district court agreed that no genuine issue of material fact existed and that FDIC was entitled to judgment as a matter of law.

ISSUES ON APPEAL

¶4    Claimants first contend that, contrary to the district court's ruling, Pentalon's nearly completed excavation either constituted commencement to do work under the Act as a matter of law or, in the alternative, created a genuine issue of material fact as to whether Pentalon had commenced work for purposes of the Act.

¶5    Claimants also contend that the district court erred in striking affidavits submitted with its memorandum in opposition to FDIC's motion for summary judgment and in striking its motion for reconsideration.

¶6    FDIC responds that, even assuming the excavation constitutes the commencement of work for purposes of the Act,

this court should affirm the ruling of the district court on alternative grounds.

ANALYSIS

I. Pentalon's Excavation Constitutes "Commencement to Do Work."

¶7     Claimants contend that the district court erred in ruling as a matter of law that Pentalon's excavation did not constitute commencement to do work under the Act, with the result that Pentalon's lien does not enjoy priority. Claimants argue that they provided "evidence sufficient to establish commencement of work as a matter of law." FDIC responds that Pentalon's excavation does not "amount to commencement" under the Act, because the work does not "put a reasonable observer on notice that lienable work was underway."

¶8     On appeal, we review a district court's "legal conclusions and ultimate grant or denial of summary judgment for correctness." *Orvis v. Johnson*, 2008 UT 2, ¶ 6, 177 P.3d 600 (citation and internal quotation marks omitted).

¶9     Utah Code section 38-1-5 provides the guidelines for determining the priority of liens in this case. *See* Utah Code Ann. § 38-1-5 (LexisNexis 2005).[1] That section provides that mechanics' liens generally date back to the commencement of work:

---

1. In 2012, this section was amended and renumbered as section 38-1a-503. *See* Utah Code Ann. § 38-1a-503 (LexisNexis 2014). The code now provides that a lien "relates back to, and takes effect as of, the time of the first preliminary notice filing." *Id.* § 38-1a-503(1).

> The liens herein provided for shall relate back to, and take effect as of, the time of the commencement to do work or furnish materials on the ground for the structure or improvement, and shall have priority over any lien, mortgage or other encumbrance which may have attached subsequently to the time when the building, improvement or structure was commenced, [or] work begun . . . .

*Id.* The Act "is remedial in nature and seeks to provide protection to laborers and materialmen who have added directly to the value of the property of another by their materials or labor." *Calder Bros. Co. v. Anderson*, 652 P.2d 922, 924 (Utah 1982). As a result, we construe the phrase "commencement to do work" in favor of lien claimants. *Id.* "Materialmen's and mechanics' liens resulting from materials furnished or labor performed relate back to and attach as of the date of the commencement of the first work on the improvement or structure involved." *Id.*

¶10    To constitute commencement of work under the Act, the work must be of the type "'that a person using reasonable diligence in examining the property would be able to see it and be on notice that lienable work was underway.'" *EDSA/Cloward, LLC v. Klibanoff* (*Klibanoff I*), 2005 UT App 367, ¶ 22, 122 P.3d 646 (quoting *E.W. Allen & Assocs., Inc. v. FDIC*, 776 F. Supp. 1504, 1509 (D. Utah 1991)). The work must be visible because "visible evidence of work performed provides notice to any interested party that work has commenced." *Anderson*, 652 P.2d at 924 n.1; *accord Ketchum, Konkel, Barrett, Nickel & Austin v. Heritage Mountain Dev. Co.*, 784 P.2d 1217, 1221 (Utah Ct. App. 1989). When considering on-site visible work, we consider whether "all the work together . . . may contribute to putting a reasonable observer . . . on notice that [lienable] work was underway." *EDSA/Cloward, LLC v. Klibanoff* (*Klibanoff II*), 2008 UT App

284, ¶ 11, 192 P.3d 296 (alteration and omissions in original) (citation and internal quotation marks omitted).

¶11 In general, site preparation does not constitute commencement, because it may not put a person using reasonable diligence on notice that lienable work is underway. For example, in *Ketchum, Konkel, Barrett, Nickel & Austin v. Heritage Mountain Development Co.*, 784 P.2d 1217, 1221 (Utah Ct. App. 1989), we held that "surveying, staking, and soil testing" do not constitute commencement, because they "do not constitute a visible on-site improvement."*Id.* at 1228. There, the workers performed architectural, engineering, surveying, consulting, and planning services for a ski resort. *Id.* at 1219. However, their work did not qualify for priority because "the mere fact that work was a proper subject of a lien cannot establish priority where it does not give notice of commencement." *Id.* at 1227 (citation and internal quotation marks omitted).

¶12 In *Klibanoff II*, 2008 UT App 284, 192 P.3d 296, this court determined that surveys, wetlands delineations, groundwater monitoring, geotechnical testing, and irrigation work did not constitute commencement of work. *Id.* ¶¶ 10–12. We reasoned that because the work did not suggest the existence of an "impending or ongoing construction project on the [p]roperty," *id.* ¶ 12, the work failed "to put a prudent lender on notice that lienable work was under way," *id.* ¶ 20.

¶13 Furthermore, in *Western Mortgage Loan Corp. v. Cottonwood Construction Co.*, 424 P.2d 437 (Utah 1967), our supreme court stressed the requirement of visible on-site construction. *Id.* at 439. There, the court determined that off-site general subdivision improvements not involving the lot at issue did not constitute commencement of work. *Id.* The court stated that "[t]he problem is one of notice. The presence of materials on the building site or evidence on the ground that work has commenced on a structure

or preparatory thereto is notice to all the world that liens may have attached." *Id.*

¶14 Accordingly, the United States District Court for the District of Utah has ruled that under Utah law "[a]ctual excavation for the foundation of a building" constitutes commencement under the Act because "a person using reasonable diligence in examining the premises would be able to see it and be on notice that lienable work was underway." *E.W. Allen & Assocs., Inc.*, 776 F. Supp. at 1509. Claimants assert, and FDIC has cited no contrary case, that this is the universal rule. *See* J.R. Harvey, Annotation, *What Constitutes "Commencement of Building or Improvement" for Purposes of Determining Accrual of Mechanic's Lien*, 1 A.L.R.3d 822 (1965 & Supp. 2013) (collecting more than eighty cases that support the proposition that excavation of a foundation or basement constitutes commencement); *see also Wylie v. Douglas Lumber Co.*, 8 P.2d 256, 257 (Ariz. 1932) (concluding that excavation of a foundation is sufficient to constitute commencement of work for mechanic's lien priority); *Seracuse Lawler & Partners, Inc. v. Copper Mountain*, 654 P.2d 1328, 1330–31 (Colo. App. 1982); *Consolidated Lumber Co. v. Northern Lakes Constr. of MN, Inc.*, No. A10-1472, 2011 WL 1545794, at *3 (Minn. Ct. App. Apr. 26, 2011); *Drilling Serv. Co. v. Baebler*, 484 S.W.2d 1, 9 (Mo. 1972); *Robison v. Thatcher*, 451 P.2d 863, 864 (Or. 1969).

¶15 Here, Pentalon had nearly completed excavation for the foundation of the building when FDIC recorded its trust deed. By that time Pentalon had already spent over 213 hours excavating the property with heavy machinery and installing geotextile fabric. In fact, the excavation trenches appear to outline the footprint of a building. Unlike prior cases where we have denied priority to lien claimants because they did not conduct visible on-site work, here, a "prudent lender [would be]

on notice that lienable work was under way." *See Klibanoff II*, 2008 UT App 284, ¶ 20.[2]

¶16    FDIC argues that Pentalon's work does not constitute commencement, because Pentalon had not actually completed excavation before FDIC recorded its trust deed. FDIC posits that "partial excavation looks very much like the activities that do not amount to commencement under Utah law: clearing land, grading land, and general excavation." But here, Pentalon's near-complete excavation consisted of digging trenches for the foundation of a building, piling mounds of dirt, and installing geotextile fabric. This work does not resemble "clearing land, grading land, or general excavation." Rather, any person using reasonable diligence in examining the property would be able to see the work and be on notice that lienable work was under way. *Calder Bros. Co. v. Anderson*, 652 P.2d 922, 924 (Utah 1982).

¶17    FDIC, citing a case from Missouri, argues further that until excavation of a basement or foundation is complete, a reasonable observer would be unable to determine if the work constitutes commencement. *See H.B. Deal Constr. Co. v. Labor Disc. Ctr., Inc.*, 418 S.W.2d 940, 944, 952 (Mo. 1967). However, the case FDIC cites actually holds that ongoing excavation of a foundation constitutes work sufficient to place a reasonable observer on notice that construction is underway. *Id.* at 954. The rule derived from this holding, the "first-spade rule," provides

---

2. We recognize the apparent circularity in tying when a lien attaches to when an observer would observe "lienable" work. We read the phrase "lienable work" as shorthand for "work on the ground for the structure or improvement." Utah Code Ann. § 38-1-5 (LexisNexis 2005). We thus understand the rule to be that the lien attaches when a prudent lender would recognize that work on the ground for a structure or improvement is under way. *See Klibanoff II*, 2008 UT App 284, ¶ 20, 192 P.3d 296.

that "commencement" means "the visible commencement of actual operations on the ground for the erection of the building or the making of the improvement which makes it apparent that a building has been commenced or that an improvement is to be made." *Id.* at 951. Claimants rightly point out that FDIC's reading would convert Missouri's "first-spade rule" into a "last-spade rule."

¶18   Finally, FDIC maintains that Pentalon's excavation amounted to no more than soil leveling, which, they argue, under Utah law does not constitute commencement of work. In support of this argument, FDIC offers dicta from our opinion in *Ketchum*: "Utah's position is consistent with the majority of jurisdictions which have ruled that . . . leveling the ground . . . [does] not constitute 'visible' on-site improvements required to establish priority under mechanics' liens statutes." *Ketchum, Konkel, Barrett, Nickel & Austin v. Heritage Mountain Dev. Co.*, 784 P.2d 1217, 1227 (Utah Ct. App. 1989) (holding that surveying, staking, and soil-core sampling did not constitute visible on-site improvement and therefore did not constitute commencement of work). If we had previously held that leveling the ground did not constitute commencement of work, and had Pentalon done nothing more than level the ground, this argument might have some force. But our caselaw has never drawn this distinction. In any event, Pentalon did very nearly the opposite of leveling the ground: it dug wide trenches, in distinctive shapes, *see infra* Exhibit C, in otherwise level ground. In light of the statutory text, the difference matters: while level ground might leave a reasonable observer to doubt whether work on a particular "structure or improvement" had commenced, excavation in the shape of a structure or improvement does not. *See* Utah Code Ann. § 38-1-5 (LexisNexis 2005).

¶19   In conclusion, Pentalon's nearly completed excavation constitutes "commencement" under the Act because the excavation was sufficient "to put a prudent lender on notice that

lienable work was under way." *See Klibanoff II*, 2008 UT App 284, ¶ 20, 192 P.3d 296.[3]

## II. Pentalon's Other Contentions Are Not Ripe.

¶20    Pentalon also contends that "the district court erred in striking evidence Pentalon submitted alongside its opposition to FDIC's motion for summary judgment" and that "the district court erred in striking Pentalon's motion for reconsideration." Pentalon asks us to address these issues on the ground that "they will be relevant to the determination of Pentalon's attorney fee award on remand." Pentalon argues that it "should be entitled to the attorney fees it incurred in preparing these erroneously stricken materials." FDIC responds that "the trial court acted well within its discretion" in "declining to grant Pentalon's repetitive motions for reconsideration" and in striking the evidence it submitted.

¶21    We decline to address these issues because they are not ripe. The ripeness doctrine "serves to prevent courts from issuing advisory opinions on issues that are not ripe for adjudication." *Fundamentalist Church of Jesus Christ of Latter-Day Saints v. Lindberg*, 2010 UT 51, ¶ 40, 238 P.3d 1054 (citation and internal quotation marks omitted). A dispute "is ripe when a conflict over the application of a legal provision [has] sharpened into an actual or imminent clash of legal rights and obligations between the parties thereto." *Bodell Constr. Co. v. Robbins*, 2009 UT 52, ¶ 29, 215 P.3d 933 (alteration in original) (citation and internal quotation marks omitted). On the other hand, a dispute is not ripe "if there exists no more than a difference of opinion

---

3. Because we rule as a matter of law that Pentalon's excavation work constituted commencement under the Act, we do not address Pentalon's alternative contention that a genuine issue of material fact existed.

regarding the hypothetical application of [a provision] to a situation in which the parties might, at some future time, find themselves." *Id.* (alteration in original) (citation and internal quotation marks omitted).

¶22   Here, Pentalon asks us to rule on certain "procedural decisions . . . because they will be relevant to the determination of Pentalon's attorney fee award on remand." Pentalon asks us to do so to set the table for its motion for attorney fees in the trial court. But Pentalon has not yet prevailed below, nor filed a motion for attorney fees, nor has the trial court denied a fee motion. Accordingly, the dispute remains at this stage hypothetical. It presents "a situation in which the parties might, at some future time, find themselves," rather than a conflict "sharpened into an actual or imminent clash of legal rights and obligations between the parties." *Id.* (citation and internal quotation marks omitted). We accordingly decline to address the propriety of the district court's procedural orders at this time.

### III. We Decline to Affirm the District Court's Ruling on Alternative Grounds.

¶23   In addition to defending the district court's ruling on section 38-1-5, FDIC asks us to affirm the district court's ruling that "FDIC's deed of trust is entitled to priority over Pentalon's mechanic's lien" on two alternative grounds: first, that Pentalon's work "was not lienable" under the Act, because Pentalon did not perform its work "at the instance of the owner" as the Act requires. *See* Utah Code Ann. § 38-1-3 (LexisNexis 2005); and second, that Pentalon "is estopped from asserting the priority of its mechanic's lien."

¶24   Claimants urge this court not to reach these alternative grounds. They contend that FDIC "stayed further briefing of the[se] arguments in the district court." Claimants further argue that had FDIC presented the district court with the argument that Pentalon's work was not performed at the instance of the

owner, they "would have developed a record . . . support[ing] the proposition that it began (and nearly finished) excavating the foundation of the project 'at the instance of the owner.'" Finally, Claimants maintain that discovery relevant to FDIC's estoppel argument was still in progress when the district court entered the order presently on appeal.

¶25 Though we are never obligated to affirm on other grounds, this court may choose to affirm the judgment of the district court on any legal ground or theory apparent on the record:

> [A]n appellate court may affirm the judgment appealed from if it is sustainable on any legal ground or theory apparent on the record, even though such ground or theory differs from that stated by the trial court to be the basis of its ruling or action, and this is true even though such ground or theory is not urged or argued on appeal by appellee, was not raised in the lower court, and was not considered or passed on by the lower court.

*Bailey v. Bayles*, 2002 UT 58, ¶ 10, 52 P.3d 1158 (citation and internal quotation marks omitted). "Of course, the converse is also true: we will not affirm a judgment if the alternate ground or theory is not apparent on the record." *Francis v. State*, 2010 UT 62, ¶ 19, 248 P.3d 44. To affirm on a ground not apparent on the record "would invite [each] party to selectively focus on issues below, the effect of which is holding back issues that the opposition had neither notice of nor an opportunity to address." *State v. Montoya*, 937 P.2d 145, 149 (Utah Ct. App. 1997). An alternative ground is "apparent on the record" if the record contains "sufficient and uncontroverted evidence supporting the ground or theory to place a person of ordinary intelligence on notice that the prevailing party may rely thereon on appeal." *Id.* at 149–50.

¶26   We decline to reach the alternative theories advocated by FDIC as grounds to affirm. FDIC has not demonstrated that these claims are "apparent on the record." *See Bailey*, 2002 UT 58, ¶ 10. Claims are not apparent on the record where, as here, the district court's consideration of the issues was stayed at a stage where, Claimants reasonably argue, further record development was necessary. Of course, FDIC is free to pursue these theories on remand.

CONCLUSION

¶27   Pentalon's near-complete excavation work constitutes commencement of work under section 38-1-5. We therefore reverse the district court's grant of FDIC's motion for summary judgment and its denial of Pentalon's motion for summary judgment and remand the case for further proceedings.

———————

EXHIBIT A



EXHIBIT B



EXHIBIT C



DAVIS, Judge (dissenting):

¶28   I agree with the majority's determination that the district court erred in concluding that work had not commenced as a matter of law. Accordingly, I concur in reversing the district court's grant of summary judgment in favor of FDIC. However, I do not agree with the majority that the question of whether work had commenced can be decided as a matter of law under the circumstances of this case. Thus, I would affirm the district court's denial of Pentalon's motion for summary judgment on alternative grounds, namely, that disputed issues of material fact precluded summary judgment.

¶29   The question of whether "a person using reasonable diligence in examining the property would be able to see [the work] and be on notice that lienable work was underway" is a question for the factfinder under the circumstances of this case. *See Klibanoff I*, 2005 UT App 367, ¶ 22, 122 P.3d 646 (citation and internal quotation marks omitted). Although I do not necessarily disagree with the majority's conclusion that the photographs depict lienable work, I do not think that this conclusion may be reached as a matter of law. *See* Utah R. Civ. P. 56(c); *Jones v. Farmers Ins. Exch.*, 2012 UT 52, ¶ 8, 286 P.3d 301 (observing that "[a] genuine issue of fact exists where, on the basis of the fact in the record, reasonable minds could differ on whether . . . conduct measures up to the required standard" and that "summary judgment should be granted only when it clearly appears that there is no reasonable probability that the party moved against could prevail" (citations and internal quotation marks omitted)). In reaching its determination, I believe the majority has impermissibly entered the realm of factfinding, which should be left to the trial court judge or jury.

¶30   Moreover, in light of our reversal of the court's ruling on FDIC's motion for summary judgment, I am not convinced that the district court's denial of Pentalon's motion for summary judgment is ripe for appeal. The denial of a motion for summary

judgment is "archetypically non-final" because it "leave[s] the merits of the case unresolved." *Mellor v. Wasatch Crest Mut. Ins.*, 2012 UT 24, ¶ 12, 282 P.3d 981; *see also Heuser v. Schmittroth*, 2002 UT App 42U, para. 2 ("The denial of a summary judgment motion is not final and appealable because it leaves the case pending."). Because we have reversed the district court's grant of summary judgment in favor of FDIC, the case is once again unresolved. Thus, appeal from the district court's denial of Pentalon's motion may be more appropriate once the case has been resolved on the merits following a trial. *See Normandeau v. Hanson Equip., Inc.*, 2009 UT 44, ¶ 15, 215 P.3d 152 (holding that the denial of a motion for summary judgment on purely legal grounds may be appealed following a trial on the merits).

_____