2005 UT App 367

**EDSA/CLOWARD, L.L.C., Plaintiff and Appellant,**

v.

**Daniel KLIBANOFF; Red Sea Development, L.C.; The Homestead Lodge, L.C.; Zions First National Bank; Randall R. Heaton; Reed Demordaunt; Bruce Rees; Nathan B. Winters; R/C Engineering, Inc.; Ray, Quinney, & Nebeker; Atlas Machinery Company; Komatsu Equipment Co.; Jack Johnson Company; and John Does 1–20, Defendants and Appellee.**

No. 20040695–CA.

Court of Appeals of Utah.

Sept. 1, 2005.

---

Before Judges BENCH, GREENWOOD, and THORNE.

OPINION

BENCH, Associate Presiding Judge:

¶1 Plaintiff EDSA/CLOWARD (EDSA) appeals an order granting a summary judgment motion in favor of Defendant Daniel Klibanoff. We reverse.

## BACKGROUND

¶2 From October 2000 through June 2002, EDSA provided services and materials worth $555,432.46 for a thirteen acre planned development (the property) located in Midway, Utah. Ken Forrest and Tim Shields, the developer's managers, initiated the project and intended to develop the property into a private gated luxury condominium resort.

¶3 Forrest and Shields arranged a commercial loan with Defendant Zions First National Bank (Zions) to fund the project. The loan, secured by the "Land Purchase Loan Trust Deed, Assignment Rents and Security Agreement" (the deed), closed on June 13, 2001. Zions recorded the deed on June 15, 2001, and later assigned the deed to Klibanoff. Although EDSA did not record its Notice of Mechanic's Lien against the property until November 2002, the Jack Johnson Co. recorded its own notice on June 12, 2001, three days before the deed was recorded.

¶4 In his deposition, Forrest stated that prior to June 15, 2001, the date Zions recorded the deed, "every day stuff was getting done" on the property. M. Gregory Cloward, EDSA's principal, added that a "[p]redominate part of our work is work for on-site facilities." EDSA provided or supervised the following on-site work prior to the recording of the deed: irrigation work consisting of new irrigation ditches, a new irrigation pipe, reparation of the existing system, and installation of groundwater monitoring systems;

orange fencing; surveys and survey stakes; and digging of test holes.[1]

¶5 In October 2000, in order to proceed with the development, EDSA used a backhoe to dig new ditches and install a new irrigation pipe to dry up the property. The irrigation pipe is approximately twenty four inches in diameter, and many parts of the pipe are still visible. In January 2001, for days at a time, drilling rigs were used to drill holes and install groundwater monitoring systems. A groundwater hydrologist installed permanent PVC pipes to monitor the groundwater levels. These four inch pipes were partially in the ground, but were visible. The drilling rigs were also used to drill bore holes and gather and test soil samples. Even though Klibanoff contends that the irrigation work was only to repair clogged ditches and fix broken pipes, Cloward stated that "such work was done for the purpose of making the property habitable and was more than just reparation of existing drainage ditches." He also noted that the "issue of groundwater and monitoring the groundwater was a key component to the development of the project at issue...." Forrest added that "this work was a definite improvement to the property ... [and] also enhanced the value of the property."

¶6 In April or May 2001, orange plastic fencing was placed "everywhere" on the property. EDSA presented evidence that the fencing was not the type homeowners use to protect against trespassers, but rather is used when constructing on real property. Forrest stated that "it connote[s] survey or borders or typically those type of things. It would indicate somebody is doing some sort of work on the property."

¶7 EDSA surveyed the property multiple times. Survey stakes were placed all over the property. The stakes were big markers

---

1. In addition, EDSA prepared various plans, specifications, designs, and drawings for the development. The parties concede that the preparation of this off-site work does not constitute commencement of work under the Mechanics' Liens Statute; thus, it is not necessary to discuss this work in detail. Klibanoff presented evidence that actual construction of the structures had not commenced prior to the recording of the deed. However, since such construction is not required to establish priority for mechanics' liens, that

evidence is not determinative. *See First of Denver Mort. Investors v. C.N. Zundel*, 600 P.2d 521, 525 (Utah 1979) (holding that water and sewer lines constituted commencement of work for priority purposes); *W. Mortgage Loan Corp. v. Cottonwood Constr. Co.*, 18 Utah 2d 409, 424 P.2d 437, 439 (1967) ("The presence of materials on the building site or evidence on the ground that work has commenced on a structure or *preparatory thereto* is notice to all the world that liens may have attached." (emphasis added)).

generally three feet tall, with flags and permanent brass caps. Corners of the planned buildings were also marked. Additionally, hundreds of pin flags, approximately two feet tall, were placed to delineate the wetlands.

¶ 8 Shields stated that he saw visible work and heavy equipment on the property prior to June 15, 2001. He further noted that the work on the property directly related to the building of the complex. However, Klibanoff presented evidence that two witnesses did not observe any work on the property in February 2001. Additionally, Forrest admitted that once the installation of the pipe in October and drilling of the holes in January were "finished, nothing [EDSA] did constituted building on the site that would be visible to a layman."

¶ 9 This case involved multiple parties, causes of action, claims, and cross-claims. This appeal, however, includes only two parties, EDSA and Klibanoff. EDSA sought enforcement and foreclosure of its mechanic's lien. Klibanoff filed a quiet title counterclaim and cross-claim alleging priority of his interest in the property through the deed. EDSA filed a motion for partial summary judgment. The next day, Klibanoff filed a motion for summary judgment seeking dismissal of EDSA's cause of action. Klibanoff later filed a separate summary judgment motion regarding his quiet title counterclaim and cross-claim.

¶ 10 The district court heard oral arguments and then issued a ruling denying the summary judgment motions. However, the court permitted further briefing and evidence in regards to the Jack Johnson lien. Both parties submitted further memoranda and EDSA also submitted a motion for reconsideration. The district court again conducted oral arguments, and at the conclusion of the hearing, denied EDSA's motion for reconsideration and granted Klibanoff's motion for summary judgment. EDSA now appeals.

## ISSUES AND STANDARDS OF REVIEW

¶ 11 First, EDSA asserts that the district court erred in ruling that record notice does not establish priority under the Utah Mechanics' Liens Statute. *See* Utah Code Ann.

§ 38–1–1, et seq. (2001). Second, EDSA asserts that the district court erred in holding that, as a matter of law, EDSA did not commence visible work on the property, pursuant to Utah Code section 38–1–5, prior to the recording of the deed. *See* Utah Code Ann. § 38–1–5 (2001). In reviewing a summary judgment "we examine the court's legal conclusions for correctness," and "we view the facts and all reasonable inferences drawn therefrom in the light most favorable to the non-moving party." *Smith v. Four Corners Mental Health Ctr.,* 2003 UT 23,¶¶ 2, 13, 70 P.3d 904. We "will allow the summary judgment to stand only if the movant is entitled to judgment as a matter of law on the undisputed facts." *Kilpatrick v. Wiley, Rein & Fielding,* 909 P.2d 1283, 1289 (Utah Ct.App. 1996).

## ANALYSIS

### I. Record Notice

¶ 12 EDSA asserts that pursuant to Utah Code section 38–1–9(2) of the Mechanics' Liens Statute, record notice provides priority over other encumbrances. *See* Utah Code Ann § 38–1–9(2) (2001). Section 38–1–9(2) provides that "[f]rom the time the claim is filed for record, all persons are considered to have notice of the claim." *Id.* The Jack Johnson Co. recorded its lien on June 12, 2001, three days prior to when Zions recorded its deed. EDSA's lien has the same priority as the Jack Johnson lien because of the equal footing provision of Utah Code section 38–1–10. *See* Utah Code Ann. § 38–1–10 (2001) ("The liens for work and labor done or material furnished as provided in this chapter shall be upon equal footing...."). Thus, if record notice does establish priority, EDSA's lien would have priority over the deed.

¶ 13 Klibanoff asserts that priority is exclusively governed by Utah Code section 38–1–5. *See Ketchum Konkel v. Heritage Mountain Dev. Co.,* 784 P.2d 1217, 1220 (Utah Ct.App.1989) (noting that "[p]riority of mechanics' liens, including architectural liens, is governed by Utah Code Ann. § 38–1–5"). Section 38–1–5, titled "Priority—Over other encumbrances," states:

The liens herein provided for shall relate back to, and take effect as of, the time of the commencement to do work or furnish materials on the ground for the structure or improvement, *and shall have priority* over any lien, mortgage or other encumbrance which may have attached subsequently to the time when the building, ·improvement or structure was commenced, work began, or first material furnished on the ground....

Utah Code Ann. § 38–1–5 (emphasis added). This section on priority does not mention record notice.

■ ¶ 14 EDSA does not dispute that section 38–1–5 establishes priority. Rather, it contends that because section 38–1–9 states that recording a lien provides notice to "all persons," it creates an alternative method of priority.[2] Utah Code Ann. § 38–1–9(2). However, EDSA concedes that actual notice, pursuant to the holding in *Ketchum*, does not establish priority under the statute. *See Ketchum*, 784 P.2d at 1224. Therefore, the mere use of the term "notice" in section 38–1–9 does not establish a method of priority, particularly given that section 38–1–5 specifically uses the term "priority."

¶ 15 The *Ketchum* court confirmed that, regardless of actual notice, visible work or materials must be present to establish priori-ty. *See id.* EDSA claims that *Ketchum* does not apply because it discussed whether actual notice, not record notice, establishes priority. *See id.* Though *Ketchum* may not be controlling, its reasoning is very persuasive.[3]

■ ¶ 16 First, the *Ketchum* court reasoned that "had the legislature intended priority under section 38–1–5 to be affected by actual notice, it could have so stated but did not." *Id.* "The best evidence of the true intent and purpose of the legislature in enacting a statute is the plain language of the statute." *Lieber v. ITT Hartford Ins. Ctr., Inc.*, 2000 UT 90, ¶ 7, 15 P.3d 1030. As with actual notice, "[t]he priority section makes no mention of record notice." *E.W. Allen & Assocs., Inc. v. FDIC*, 776 F.Supp. 1504, 1507 (D.Utah 1991). "Presumably, the Utah legislature had the opportunity to use the record notice system for establishing easily ascertainable priority dates for mechanics' liens but did not." *Id.* Therefore, "physical notice of work on the property must be present before mechanics' liens have priority over other third parties, especially lenders." *Ketchum*, 784 P.2d at 1222.

¶ 17 The conclusion that record notice does not establish priority does not nullify section 38–1–9, as EDSA asserts. Section 38–1–9 requires a lien to be recorded in order to perfect and preserve the lien. *See generally Projects Unlimited v. Copper State Thrift*, 798 P.2d 738, 750 (Utah 1990). By perfecting a lien through record notice, a mechanic creates rights against the owner. *See Ketchum*, 784 P.2d at 1221. In contrast, by establishing priority through commencement of visible work, the mechanic has rights against third parties. *See id.* ("The distinction between the rights of mechanics against the owner of the property where no priority issue exists and the adjustment of relative priorities of third parties in the property is

**2.** EDSA asserts that *Morrison v. Carey–Lombard*, 9 Utah 70, 33 P. 238 (1893), supports its claim that record notice provides priority. A previous version of the Mechanics' Liens Statute, which applied in *Morrison*, contained a section that allowed subcontractors to file a separate statement to attach the lien prior to commencement of work as an additional safeguard. *See id.* at 240. This section is not in the current version of the statute, and thus, EDSA's reliance on this case is misplaced. Further, the *Morrison* court held that once a principal or subcontractor "has done work or furnished material, and then filed the statement provided for in section 10 ... his lien is complete and superior to every incumbrance ... subsequent to the date of commencing to do work or to furnish material." *Id. at* 239. Thus, in contrast to EDSA's assertion, *Mor-*

*rison* supports the conclusion that commencement of work provides the priority date, and record notice merely preserves and perfects the lien.

**3.** In *Ketchum*, the court concluded that off-site architectural work does not qualify as commencement of work under section 38–1–5, and therefore, does not establish priority. *See Ketchum Konkel v. Heritage Mountain Dev. Co.*, 784 P.2d 1217, 1220–24 (Utah Ct.App.1989). This is important to consider because if we were to hold that record notice creates priority, it would arguably allow off-site architectural work to establish priority through filing. This would be contrary to the holding in *Ketchum*.

crucial."). Thus, in order to perfect a lien and create priority as to other third parties, the lienor must record and commence visible work.

¶ 18 Second, the *Ketchum* court reasoned that if actual notice established priority, "all mechanics' liens for work performed on the project, not just the work of the architect, would suddenly take priority over a secured lender with the consequent adverse impact on construction financing." *Ketchum Konkel v. Heritage Mountain Dev. Co.*, 784 P.2d 1217, 1224 (Utah Ct.App.1989). Likewise, if record notice established priority, because of the equal footing provision of Utah Code section 38–1–10, architects could simply record prior to the lender and gain priority for all mechanics' liens. *See* Utah Code Ann. § 38–1–10 (2001). Although Utah has extended protection to engineers and architects, the legislature did not overturn the common-law requirement· of visible, on-site commencement of work to establish priority. *See Ketchum*, 784 P.2d at 1222.

¶ 19 Since record notice does not establish priority, EDSA's lien did not gain priority over the deed simply through the recording of the Jack Johnson lien. In order for EDSA's lien to have priority, there must have been visible commencement of work in accordance with section 38–1–5 before the deed was recorded.

## II. Commencement of Work

¶ 20 EDSA next argues that the district court erred in determining as a matter of law that EDSA did not commence on-site visible work or furnish materials on the ground prior to the recording of the deed. The on-site work EDSA provided or supervised included the following: irrigation work consisting of new irrigation ditches, a new irrigation pipe, reparation of the existing system, and installation of groundwater monitoring systems with permanent PVC pipes; placement of orange netting throughout the property; and, surveying, staking, and soil testing. As explained above, evidence of "visible work on the property or the presence of materials" establishes priority by "giving notice that [lienable] work has commenced." *Id.* at 1221; *see also Calder Bros. Co. v. Anderson*,

652 P.2d 922, 923 n. 1 (Utah 1982) ("Generally, the presence of building materials upon the land or other visible evidence of work performed provides notice to any interested party that work has commenced."); *Western Mortgage Loan Corp. v. Cottonwood Constr.*, 18 Utah 2d 409, 424 P.2d 437, 439 (1967) ("The presence of materials on the building site or evidence on the ground that work has commenced on a structure or preparatory thereto is notice to all the world that liens may have attached.").

¶ 21 Whether the work and materials provided adequate notice depends on if a reasonable person would know by looking at the land that lienable work is underway. *See Nu–Trend Elec., Inc. v. Deseret Fed. Sav. & Loan Ass'n, Inc.*, 786 P.2d 1369, 1371 (Utah· Ct.App.1990). Questions of reasonableness are typically questions of fact. *See Taylor v. Johnson*, 15 Utah 2d 342, 393 P.2d 382, 385 (1964). Summary judgment is appropriate only when "reasonable persons could not disagree about the underlying facts or about the application of the governing legal standard to the facts." *Berenda v. Langford*, 914 P.2d 45, 54 (Utah 1996). The district court held that, as a matter of law, there was no "commencement of work" prior to the recording of the deed. We disagree.·

### A. Irrigation Improvements

¶ 22 EDSA asserts that the district court erred in holding that as ·a matter of law the irrigation work was not of the nature "that a person using reasonable diligence in examining the property would be able to see it and be on notice that lienable work was underway." *E.W. Allen & Assocs., Inc. v. FDIC*, 776 F.Supp. 1504, 1509 (D.Utah 1991) (citing *Calder Bros.*, 652 P.2d at 924 n. 1). It contends that the irrigation ditches and pipe constituted visible work and "furnish[ing] materials on the ground for the structure or improvement." Utah Code Ann. § 38–1–5 (2001). Klibanoff argues, citing *Calder Bros.*, that the work provided was "ordinary and necessary maintenance rather than the commencement of an improvement" and thus did not provide adequate notice of lienable work. *Calder Bros.*, 652 P.2d at 924–25. However, the *Calder Bros.* court did not

conclude as a matter of law that the repairs did not establish priority. Rather, the court held that the record supported the district court's factual determination that the work in that case did not provide adequate notice. *See id.*

¶ 23 EDSA asserts that the work in this case is more analogous to the improvements in *First of Denver Mortgage Investors v. C.N. Zundel,* 600 P.2d 521 (Utah 1979) rather than the repairs present in *Calder Bros.* The work in *Calder Bros.* consisted of the cutting of weeds and two trees, the grouting of cracks in a building, and the painting of the building. *See Calder Bros.,* 652 P.2d at 923. "At no point up to and including the time Calder Bros.' mortgage was recorded, was it evident from the inspection of the premises that improvements had been commenced" and "[n]o materials were delivered to the premises prior to the recording of the Calder Bros.' mortgage." *Id.* at 924. In contrast, the court in *Zundel* determined that the improvements of "locating existing lines and putting in pipeline, water and sewer systems and storm drains," established the priority date for the mechanics' liens. *Zundel,* 600 P.2d at 523, 526.

¶ 24 In the present case, EDSA dug new ditches with a backhoe, installed a new irrigation pipe, repaired old pipes and ditches, and installed groundwater monitoring systems with drilling rigs. Though Klibanoff asserts that the irrigation work was limited to repairing broken pipes and clogged ditches, EDSA presented evidence that the work "was more than just reparation of existing drainage ditches," but was visible improvements to the property. Therefore, because it is not clear whether the irrigation work

amounted to mere repairs or improvements that would provide notice of lienable work, summary judgment is not proper. *See Berenda,* 914 P.2d at 54.

¶ 25 Klibanoff further argues that because the pipe installation took place months before the recording of the deed[4] and was not part of the overall project plan, it did not constitute visible commencement of work for priority purposes. *See Nu–Trend Elec. v. Deseret Fed. Sav. & Loan Ass'n, Inc.,* 786 P.2d 1369, 1371 (Utah Ct.App.1990). "For priority of a mechanic's lien to relate back to the beginning of the work for which the lien is claimed, the work must all be part of the same project; in other words, the work must have a continuity of purpose such that a reasonable observer of the site would be on notice that work was underway for which a lien could be claimed." *Nu–Trend Elec.,* 786 P.2d at 1371; *see also Fields v. Daisy Gold Mining Co.,* 25 Utah 76, 69 P. 528, 530 (1902) (noting that a lien relates back to the furnishing of the very first materials as long as the furnishing was part of a continuous contract or a single development).

¶ 26 EDSA asserts that the permanently installed pipe was a "planned and necessary part of the overall improvement and development." It contends that it created the plans for the irrigation improvements along with the plans for the rest of the development. Klibanoff argues that the irrigation plans were incidental and not part of an improvement envisioned by the developer. "[T]he question whether work is for the same project ... is a question of fact," and where there are disputed issues of fact, summary judgment is not proper. *Nu–Trend Elec.,* 786 P.2d at 1371–72.[5]

---

4. Although not specifically articulated, Klibanoff suggests that the time lag amounts to material abandonment. "For the priority of a mechanic's lien to relate back to the commencement of the work, the work must be performed without material abandonment." *Nu–Trend Elec., Inc. v. Deseret Fed. Sav. & Loan, Ass'n, Inc.,* 786 P.2d 1369, 1371 (Utah Ct.App.1990) (quotations and citation omitted). "[I]n order to determine whether a material abandonment has occurred, an inquiry into intention must be made." *Ketchum Konkel v. Heritage Mountain Dev. Co.,* 784 P.2d 1217, 1226 (Utah Ct.App.1989). "[W]hat constitutes a 'material abandonment' sufficient to prevent relation back of mechanics' liens under section 38–

1–5 is a complex inquiry." *Id.* Because it is such a fact-sensitive question, whether there was a material abandonment after the installation of the pipe cannot be decided as a matter of law. *See Nu–Trend Elec.,* 786 P.2d at 1371.

5. Klibanoff also asserts that because the irrigation work took place on a small lot, which was to remain wetlands, rather than where construction of buildings would take place, the irrigation work was severable and separate. However, EDSA presented evidence that the irrigation work related to drying up the property for the benefit of the entire development, and thus, the issue cannot be

## B. Orange Fencing

¶ 27 Citing *National Lumber Co. v. Farmer & Son, Inc.*, 251 Minn. 100, 87 N.W.2d 32 (1957), Klibanoff argues that the orange plastic fence as a matter of law cannot constitute visible commencement of work. However, *National Lumber Company* does not support Klibanoff's assertion. In fact, the Minnesota court noted that "there can be no doubt" that the fence constituted an actual visible improvement on the property. *Id.* at 35. However, the court confirmed the lower court's ruling, where the record justified the conclusion that because the fence was severable and separable from the later work, it did not constitute the beginning of the improvements. *See id.* at 36. Thus, whether a protective fence constitutes an improvement and establishes adequate notice depends on the facts of the case.

¶ 28 Klibanoff asserts that the fencing in this case did not provide adequate notice of lienable work because homeowners typically use the fence to discourage trespassing. However, EDSA presented evidence that the fence is not "something that a homeowner would throw up on their property," but rather is used to "connot[e] survey or borders or typically those type of things." Further, the fencing was "everywhere" and "would indicate somebody is do[ing] some work on the property." Thus, where reasonable persons could differ whether the fence provided notice that lienable work was underway, the issue cannot be decided as a matter of law. *See Berenda v. Langford,* 914 P.2d 45, 54 (Utah 1996).

## C. Surveying, Staking, and Soil Testing

¶ 29 EDSA asserts that the district court erred in finding that as a matter of law the surveying, staking, and soil testing did *not constitute visible commencement of work.* The court in *Ketchum* held that "surveying, staking, and soil testing do not constitute a visible *on-site improvement as required by* Utah law for relation back under sections 38–

1–5 and –10." *Ketchum Konkel v. Heritage Mountain Dev. Co.,* 784 P.2d 1217, 1228 (Utah Ct.App.1989). Standing alone, this work would not constitute commencement of work; however, it was not the only visible work on the property. The *Ketchum* court, citing *Tripp v. Vaughn,* 747 P.2d 1051 (Utah Ct.App.1987), stated that "the court concluded that the staking, *which was the only visible manifestations* of the surveyor's work, was not 'sufficiently noticeable or related to actual construction to impart notice to a prudent lender.' " *Ketchum,* 784 P.2d at 1227 (emphasis added) (quoting *Tripp,* 747 P.2d at 1055). The *Ketchum* court also cited *First of Denver Mortgage Investors v. C.N. Zundel,* 600 P.2d 521 (Utah 1979), stating that "the Utah Supreme Court ... implied that surveying and staking *alone* was not sufficient for commencement of work under section 38–1–5." *Id.* (emphasis added) (citing *First of Denver Mortgage Investors v. C.N. Zundel,* 600 P.2d 521, 526 (Utah 1979)). Thus, even though staking, surveying, and soil testing alone would not constitute visible commencement of work, when considering all the work together, they may contribute to putting a "reasonable observer ... on notice that [lienable] work was underway." *Nu– Trend Elec.,* 786 P.2d at 1371; *see also Ketchum,* 784 P.2d at 1226 (implying that although staking alone does not commence work, it may defeat a material abandonment claim by giving notice to a third party that the "work was continuing" or that the initial project had not ceased).

¶ 30 Finally, the *Ketchum* court noted that the staking in *Tripp* did not relate to actual construction. *See Ketchum,* 784 P.2d at 1227. There is evidence in the present case that the stakes delineated not only the property boundaries but also the corners of all the buildings to be constructed. Thus, EDSA asserts that the stakes went beyond mere surveying, and actually prepared the land for construction. Klibanoff argues that the survey work did not delineate street or lot lines but rather was for preparation of

---

decided as a matter of law. *See First of Denver Mortgage Investors v. C.N. Zundel,* 600 P.2d 521, 526 (Utah 1979) (noting that the work benefitted the entire subdivision and thus was not an "off-site" improvement); *Nu–Trend Elec., Inc. v. Des-*

eret Fed. Sav. & Loan Ass'n, Inc., 786 P.2d 1369, 1371–72 (Utah Ct.App.1990) (stating that whether work is for the same project is a question of fact).

maps and plans. Thus, there remain other facts relating to the extent of the staking, which cannot properly be settled on summary judgment. *See Kilpatrick v. Wiley, Rein & Fielding,* 909 P.2d 1283, 1289 (Utah Ct.App.1996).

## CONCLUSION

¶ 31 Under the Mechanics' Liens Statute, record notice does not provide priority, but rather, visible commencement of work pursuant to section 38–1–5. However, because there are disputed issues of fact whether EDSA commenced visible work or furnished materials on the property prior to the recording of the deed, summary judgment is not proper.

¶ 32 Accordingly, we reverse the summary judgment and remand for further proceedings.

¶ 33 WE CONCUR: PAMELA T. GREENWOOD and WILLIAM A. THORNE JR., Judges.