2008 UT App 284

**EDSA/CLOWARD, LLC, Plaintiff and Appellant,**

v.

**Daniel KLIBANOFF, et al., Defendant and Appellee.**

No. 20060958-CA.

Court of Appeals of Utah.

July 25, 2008.

Richard J. Armstrong and Rachel A. Asbury, Salt Lake City, for Appellant.

Elizabeth S. Whitney and Laura S. Scott, Salt Lake City, for Appellee.

Before GREENWOOD, P.J., DAVIS, and ORME, JJ.

## OPINION

ORME, Judge:

¶ 1 Plaintiff EDSA/Cloward, LLC (EDSA) appeals from the trial court's judgment and order ruling that its mechanic's lien was of a lower priority than Defendant Daniel Klibanoff's security interest in connection with a luxury condominium project in Midway, Utah (the Project) because EDSA did not commence sufficient on-site work or deliver any materials on the ground before Klibanoff's interest was recorded on June 15, 2001. EDSA also argues that the trial court erred in deeming Klibanoff the successful party and in awarding him all of his attorney fees and costs even though EDSA successfully appealed a prior order granting Klibanoff summary judgment.[1] We affirm.

---

1. EDSA also argues that the trial court erred in finding J.M. Williams & Associates, Inc.'s assignment of its lien rights to EDSA ineffective, and in ruling that EDSA's lien claim, even if the assignment was effective, was untimely. Because we agree that Klibanoff's security interest is superior to EDSA's mechanic's lien, we need not reach these issues.

## BACKGROUND

¶2 Defendant Red Sea Development, LC (Red Sea) began the Project in 2000. The Project involved the development of luxury condominiums on thirteen acres of vacant land in Midway, Utah (the Property).[2] To fund the Project, Red Sea obtained a sizeable loan from Zions Bank. The loan was secured by a trust deed recorded on June 15, 2001, and later assigned to Klibanoff.[3]

¶3 Some months earlier, in the fall of 2000, EDSA, a consulting engineering firm specializing in water projects, entered into an oral contract with Red Sea to provide various services in connection with the Project. Under the terms of the parties' agreement, Red Sea was to pay EDSA on an hourly basis for work performed on the Project, with payments due monthly. Red Sea made only two payments, totaling $3701.41, and by July 31, 2001, Red Sea owed EDSA approximately $186,000. The parties then modified the terms of their agreement to allow Red Sea to pay EDSA for its services once Red Sea obtained construction financing. EDSA continued providing services to Red Sea until it became clear that Red Sea would not be able to obtain financing. On November 8, 2002, EDSA recorded a mechanic's lien to recover more than $555,000 in unpaid services.

¶4 EDSA filed a complaint to foreclose on its mechanic's lien on February 11, 2003.[4] Klibanoff answered the complaint, claiming his security interest held priority over EDSA's lien. After the close of discovery, the parties filed cross-motions for summary judgment on the issue of whether EDSA had, as of June 15, 2001, "commence[d] to do work or furnish materials on the ground" as required for its lien to relate back to that date under Utah Code section 38–1–5.[5] *See* Utah Code Ann. § 38–1–5 (2005). The trial court held that EDSA's on-site work did not satisfy the requirement of section 38–1–5 and held that Klibanoff's interest in the Property was superior to EDSA's. EDSA appealed, and we reversed and remanded for a trial on the merits.[6] *See EDSA/Cloward, LLC v. Klibanoff*, 2005 UT App 367, ¶¶ 31–32, 122 P.3d 646.

¶5 After a bench trial on the merits, the trial court found that EDSA performed the following work prior to June 15, 2001: (1) it delineated the wetlands on the Jones, Gygi, and Guymon parcels by drilling seventeen sampling holes with a handheld auger, then examining the samples, backfilling the holes, marking the holes with pin flags, placing ninety-two additional pin flags along the de-

2. The Property consists of four separate parcels: the Jones parcel, which Red Sea purchased in October 2000; the Gygi parcel, which Red Sea purchased in January 2001; and the Homestead and Guymon parcels, which Red Sea purchased in June 2001.

3. Red Sea was ultimately unable to obtain construction financing, and as a result, it never commenced actual construction of the Project.

4. EDSA also asserted breach of contract and unjust enrichment claims against Red Sea and other defendants. EDSA obtained default judgments on these additional claims, which are not before us on appeal.

5. EDSA does not contend that any other entity commenced work or furnished materials on the ground earlier than it did. *See Ketchum, Konkel, Barrett, Nickel & Austin v. Heritage Mountain Dev. Co.*, 784 P.2d 1217, 1223 n. 8 (Utah Ct.App. 1989) ("[U]nder Utah law, commencement of any work establishes the date from which other mechanics' liens take priority even if the mechanic providing the first work releases or waives his own lien rights."), *cert. denied*, 795 P.2d 1138 (Utah 1990).

6. In opposition to Klibanoff's motion for summary judgment, EDSA asserted that its irrigation work " 'was more than just reparation of existing drainage ditches,' [and constituted] visible improvement[ ] to the property." *EDSA/Cloward, LLC v. Klibanoff*, 2005 UT App 367, ¶ 24, 122 P.3d 646. It also asserted that its "permanently installed pipe was a 'planned and necessary part of the overall improvement and development,' " *id.* ¶ 26, that its orange fencing was not " 'something that a homeowner would throw up on their property,' but rather [was] used to 'connot[e] survey or borders or typically those type of things,' " *id.* ¶ 28 (second alteration in original), and that some of the stakes on the property "delineated not only the property boundaries but also the corners of all the buildings to be constructed," *id.* ¶ 30. Given these assertions and because, in reviewing a summary judgment, " 'we view the facts and all reasonable inferences drawn therefrom in the light most favorable to the [unsuccessful] party,' " *id.* ¶ 11 (quoting *Smith v. Four Corners Mental Health Ctr.*, 2003 UT 23, ¶ 13, 70 P.3d 904), we reversed the trial court's grant of summary judgment to Klibanoff and remanded the case for trial, *see id.* ¶¶ 31–32.

lineation lines, and marking fifty-one of the pin flags with rebar stakes; (2) it performed a topographical survey of the Jones and Gygi parcels, placing approximately fourteen stakes with flags at the corners of the parcels; (3) it conducted a geotechnical study of the soil and subsurface conditions of the Property by drilling eight sampling holes with a rig brought onto the Property for one day by a subcontractor, then backfilled the holes without marking them; (4) it installed PVC pipe into eight to twelve eight-inch "well" holes to temporarily monitor ground water on the Gygi parcel, then backfilled the holes and marked the holes with orange-topped lathe stakes; (5) it performed a certified boundary survey of the Property, placing one additional stake with a flag on the corner of the Guymon parcel; (6) it removed two man-made "check dams" from a pre-existing irrigation ditch and, using a backhoe, replaced a decrepit underground pipe used to direct water from the ditch, all in an effort to prevent the development of artificial wetlands; and (7) it installed a flat metal weir, designed to temporarily monitor water flow onto a neighbor's property, on the Guymon parcel. The trial court specifically found that "[t]he surveys, wetlands delineations, ground water monitoring and geotechnical testing had to be performed before EDSA[ ] could complete the design of the Project." It also found that these activities "were prerequisites to obtaining preliminary and final approvals for the Project from Midway City and the required permit from the U.S. Army Corps of Engineers," all of which "were required *in advance of commencing construction*." Finally, it found that EDSA's irrigation improvements were nothing more than "ordinary maintenance of an existing irrigation system." [7]

¶ 6 The trial court also found that livestock, including three or four horses and six or seven sheep, were on the Property during the relevant time periods and that as of June 15, 2001, there was no orange netting or silt fencing on the Property, the corners of the buildings and roads were not staked, and there had been no excavation done, no footings or foundations poured, and no construction materials delivered to or stored on the Property. Based on these findings, which EDSA does not dispute,[8] the trial court once again held that "there was no visible commencement of work on the Property prior to June 15, 2001," [9] ruled that Klibanoff's interest in the Property was superior to EDSA's lien, and awarded Klibanoff his attorney fees and costs pursuant to Utah Code section 38–1–18, *see* Utah Code Ann. § 38–1–18(1) (2005). EDSA timely appealed.

## ISSUES AND STANDARDS OF REVIEW

¶ 7 On appeal, EDSA argues that the trial court's factual findings are insufficient to support its holding that no work was visibly commenced and no materials were furnished on the ground at the Property before June 15, 2001. This presents a mixed question of fact and law. We review the trial court's factual determinations—those findings of historical fact concerning what work was commenced and what materials were delivered—for clear error, and its legal conclusions—specifically, whether that work and those materials were sufficient to satisfy the statute—for correctness. *See State v. Pena*, 869 P.2d 932, 935–36 (Utah 1994); *General Glass Corp. v. Mast Constr. Co.*, 766 P.2d 429, 435–36 (Utah Ct.App.1988) (reviewing trial court's finding that no work commenced and no materials were delivered on the ground under a clearly erroneous standard).

¶ 8 EDSA also argues that the trial court erred in awarding Klibanoff his attorney fees and costs. Specifically, EDSA argues that both it and Klibanoff were successful parties, negating any award of fees; that

---

7. The trial court found that "[t]he new pipe was not intended to be incorporated into the final construction or systems of the Project" and that "[t]he weir was a temporary device ... [that] would not have been incorporated into the Project."

8. Although EDSA disputes the sufficiency of these findings to support the trial court's legal

conclusions, it does not contend that the findings themselves are erroneous.

9. In contrasting EDSA's actual proof at trial with its assertions on summary judgment, *see supra* note 6, the trial court expressly noted that "the evidence of visible work presented at trial ... was markedly less extensive and less persuasive."

Klibanoff's counsel failed to comply with rule 73 of the Utah Rules of Civil Procedure; and that the amount of fees awarded was unreasonable. "Attorney fees are awarded only when authorized by statute or by contract. The award of attorney fees is a matter of law, which we review for correctness." *Jensen v. Sawyers*, 2005 UT 81, ¶ 127, 130 P.3d 325. "However, a trial court has 'broad discretion in determining what constitutes a reasonable fee, and we will consider that determination against an abuse-of-discretion standard.'" *Id.* (quoting *Dixie State Bank v. Bracken*, 764 P.2d 985, 991 (Utah 1988)).

## ANALYSIS

### I. Priority

■ ¶ 9 EDSA first argues that the trial court's factual findings are insufficient to support its holding that no work was visibly commenced and no materials were furnished on the ground at the Property before June 15, 2001.[10] This holding is important because it establishes that Klibanoff's security interest in the Property enjoys a higher priority than EDSA's lien. Utah Code section 38-1-5 provides:

> The liens herein provided for shall relate back to, and take effect as of, the time of the commencement to do work or furnish materials on the ground for the structure or improvement, and shall have priority over any lien, mortgage or other encumbrance which may have attached subsequently to the time when the building, improvement or structure was commenced, work begun, or first material furnished on the ground; also over any lien, mortgage or other encumbrance of which the lien holder had no notice and which was unrecorded at the time the building, structure or improvement was commenced, work begun, or first material furnished on the ground.

Utah Code Ann. § 38-1-5 (2005).

¶ 10 EDSA's work prior to June 15, 2001, consisted of surveys, wetlands delineations, groundwater monitoring, geotechnical testing, and irrigation work. In *Ketchum, Konkel, Barrett, Nickel & Austin v. Heritage Mountain Development Co.*, 784 P.2d 1217 (Utah Ct.App.1989), *cert. denied*, 795 P.2d 1138 (Utah 1990), we said that "preparing the soil, leveling the ground, placing survey stakes, and taking soil samples do not constitute 'visible' on-site improvements required to establish priority under mechanics' liens statutes." *Id.* at 1227 (citing cases from other jurisdictions and noting that "Utah's position is consistent with the majority of [them]"). *See Tripp v. Vaughn*, 747 P.2d 1051, 1055 (Utah Ct.App.1987) (concluding that staking, which is the only visible manifestation of surveying work, is not "sufficiently noticeable or related to actual construction to impart notice to a prudent lender"). *See also First of Denver Mortgage Invs. v. C.N. Zundel & Assocs.*, 600 P.2d 521, 526 (Utah 1979) (implying that surveying and staking alone are insufficient for commencement of work under section 38-1-5); *Aladdin Heating Corp. v. Trustees*, 93 Nev. 257, 563 P.2d 82, 84 (1977) (refusing to relate mechanics' liens back to architectural, survey, and soil testing work). The Utah Supreme Court also explained in *Calder Bros. Co. v. Anderson*, 652 P.2d 922 (Utah 1982), that "[o]rdinary maintenance or clean-up work does not serve as a basis for 'tacking' so as to fix an earlier lien date under § 38-1-5 for labor and materials supplied." *Id.* at 924. In light of the authority just reviewed and the trial court's findings of fact, none of the individual tasks EDSA performed are sufficient to satisfy section 38-1-5.

¶ 11 "The problem is one of notice," *Western Mortgage Loan Corp. v. Cottonwood Constr. Co.*, 18 Utah 2d 409, 424 P.2d 437, 439 (1967), and we observed in our earlier decision in this case that "considering all the work together ... may contribute to putting a 'reasonable observer ... on notice that [lienable] work was underway.'" *EDSA/Clo-*

10. It is undisputed that EDSA is entitled to a lien in light of the services it rendered in connection with the Project. *See* Utah Code Ann. § 38-1-3 (2005) ("[A]ll persons performing any services ... shall have a lien upon the property upon or concerning which they have rendered service[.]"). The pertinent question to be resolved is the priority of that lien vis-a-vis Klibanoff's security interest.

*ward, LLC v. Klibanoff,* 2005 UT App 367, ¶ 29, 122 P.3d 646 (alteration and second omission in original) (quoting *Nu–Trend Elec., Inc. v. Deseret Fed. Sav. & Loan Ass'n,* 786 P.2d 1369, 1371 (Utah Ct.App. 1990)). Had EDSA's evidence been as extensive as it hoped, *see supra* notes 6 & 9, the trial court *might* have determined that EDSA's work, and the visible evidence of it, was sufficient to give notice of potential mechanics' liens on the Property. But in light of EDSA's "markedly less extensive and less persuasive" evidence of visible work on the Property as of June 15, 2001, *see supra* note 9, we cannot say that the trial court erred in determining that the work performed was insufficient to "bring to the attention of a lender that someone [was] claiming a lien," *Western Mortgage Loan Corp.,* 424 P.2d at 439.

¶ 12 The nature of the work performed and the minimal visible evidence of that work simply did not suggest the existence of some impending or ongoing construction project on the Property. *See id.* In sum, there is ample support in the record both for the trial court's findings and for its resulting conclusion that EDSA's lien did not attach before Klibanoff's security interest was recorded. *See Calder Bros. Co.,* 652 P.2d at 925. Accordingly, we affirm the trial court's holding that no work was visibly commenced and no materials were furnished on the ground before June 15, 2001, as well as its priority ruling in favor of Klibanoff.

## II. Attorney Fees

¶ 13 EDSA also argues that the trial court erred in awarding Klibanoff all of his attorney fees and costs, especially since EDSA successfully appealed from the trial court's prior order granting Klibanoff summary judgment. According to EDSA, its earlier victory on appeal negates Klibanoff's ultimate victory on the merits, and Klibanoff should pay his own attorney fees. On the facts of this case, we disagree.

¶ 14 Section 38–1–18 provides for an award of attorney fees to "the successful party" in a lien enforcement action. Utah Code Ann. § 38–1–18(1) (2005). A successful party is one who " 'successfully enforces or defends against a lien action.' " *A.K. & R. Whipple Plumbing & Heating v. Guy,* 2004 UT 47, ¶ 7, 94 P.3d 270 (citation omitted). Where it is not manifestly obvious which party was the "successful" one, courts employ the "flexible and reasoned approach" discussed in *Mountain States Broadcasting Co. v. Neale,* 783 P.2d 551, 556 n. 7, 557 (Utah Ct.App.1989), and clarified in *Whipple Plumbing, see* 2004 UT 47, ¶ 26, 94 P.3d 270, to determine which party was victorious. Under this approach, the trial court must consider, at a minimum, "the significance of the net judgment in the case [and] the amounts actually sought and ... recovered." *Id.* ¶ 26 (citation and internal quotation marks omitted).

¶ 15 The crux of the parties' dispute was the priority of their respective interests in the Property. EDSA sought to establish that its lien was higher in priority than Klibanoff's security interest. In all relevant respects, it failed.[11] Klibanoff, on the other hand, has prevailed in establishing his interest as senior in priority to EDSA's lien.

¶ 16 EDSA makes much of the fact that it won its earlier appeal. EDSA won that battle, to be sure, but it unequivocally lost the war. And when we consider that EDSA's win in its first appeal was largely procedural, i.e., the win simply gave it an extended opportunity to try to prove its case on the merits, we do not think that the trial court erred in concluding that Klibanoff is entitled to all of his attorney fees and allowable costs as the successful party. This is especially true where EDSA, despite rather optimistic claims about what it could show at trial, failed to prove its case in the long run. Were we to accept EDSA's rationale, Klibanoff would, in effect, suffer something of a penalty for being right all along.

---

11.  EDSA argues that it prevailed on its breach of contract and unjust enrichment claims. But that does not matter for purposes of awarding attorney fees as between it and Klibanoff. That EDSA was successful in its claims against Red Sea for breach of contract and the Homestead for unjust enrichment is immaterial to its only claim involving Klibanoff—its assertion of a priority lien interest in the Property—on which it was unsuccessful.

¶ 17 EDSA also argues that Klibanoff's counsel failed to comply with rule 73 of the Utah Rules of Civil Procedure, which requires an adequate affidavit in support of a request for attorney fees. *See* Utah R. Civ. P. 73(a)-(b). An adequate affidavit will generally answer four questions:

1. What legal work was actually performed?

2. How much of the work performed was reasonably necessary to adequately prosecute the matter?

3. Is the attorney's billing rate consistent with the rates customarily charged in the locality for similar services?

4. Are there circumstances which require consideration of additional factors, including those listed in the Code of Professional Responsibility?

*Dixie State Bank v. Bracken,* 764 P.2d 985, 990 (Utah 1988) (footnotes omitted). EDSA asserts that Klibanoff's attorneys' affidavits were inadequate. We disagree. Counsel for Klibanoff described with some detail the work they and their colleagues performed in connection with this case, substantially answering the questions contemplated by *Dixie State Bank.*

¶ 18 EDSA finally argues that the amount of fees awarded was unreasonable. In light of the trial court's findings, we again disagree. After reviewing Klibanoff's attorneys' affidavits, the trial court found that the case "presented unique and complex issues of fact and law," that "an aggressive and thorough defense by seasoned litigators was clearly justified," that Klibanoff's attorneys' work was "actually performed" and "reasonably necessary," and that the attorneys' billing rates were consistent with those customarily charged locally. We see no error in the trial court's findings and no abuse of discretion. Accordingly, we affirm the trial court's award of attorney fees and costs to Klibanoff.

¶ 19 Klibanoff requests an award of attorney fees incurred on appeal. "[A]n appeal from a suit brought to enforce a lien qualifies as part of 'an action' for the purposes of [Utah Code section 38–1–18]." *Advanced Restoration, LLC v. Priskos,* 2005 UT App 505, ¶ 36, 126 P.3d 786 (first altera-

tion in original) (citation and additional internal quotation marks omitted). We thus remand for a determination of his attorney fees reasonably incurred on appeal.

## CONCLUSION

¶ 20 The work that EDSA performed prior to June 15, 2001, was insufficient to put a prudent lender on notice that lienable work was under way. Accordingly, the trial court correctly concluded that Klibanoff's security interest in the Property was of higher priority than EDSA's mechanic's lien. Because Klibanoff was the successful party, he was entitled to an award of his reasonable attorney fees and allowable costs. We affirm the decisions of the trial court in all respects and remand for a determination of Klibanoff's attorney fees reasonably incurred on appeal.

¶ 21 WE CONCUR: PAMELA T. GREENWOOD, Presiding Judge and JAMES Z. DAVIS, Judge.