2008 UT App 420

**HOLLADAY TOWNE CENTER, LLC, a Utah limited liability company, Plaintiff, Appellant, and Cross-appellee,**

v.

**BROWN FAMILY HOLDINGS, LC, a Utah limited liability company, Defendant, Appellee, and Cross-appellant.**

No. 20070496–CA.

Court of Appeals of Utah.

Nov. 20, 2008.

Blake D. Miller, James W. Anderson, and Joel T. Zenger, Salt Lake City, for Appellant and Cross-appellee.

Blake S. Atkin and William O. Kimball, Bountiful, for Appellee and Cross-appellant.

Before THORNE, Associate P.J., BENCH and McHUGH, JJ.

## OPINION

THORNE, Associate Presiding Judge:

¶1 Holladay Towne Center, LLC (HTC) appeals from the district court's judgment dismissing HTC's declaratory judgment, breach of contract, and specific performance claims against Brown Family Holdings, LC (the Browns). The Browns cross-appeal, challenging as error the district court's conclusion that certain actions taken by HTC did not constitute a material breach of contract, as was counterclaimed by the Browns. We affirm the district court's judgment as to both HTC's claims and the Browns' counterclaims, but reverse the award of attorney fees in favor of the Browns and remand that issue for further consideration in the district court.

## BACKGROUND

¶2 In March 2005, HTC and the Browns entered into a ground lease (the Lease) for a .44 acre parcel of property (the Premises). HTC intended to develop a large shopping center in the area, and the Lease specifically provided HTC with the ability to demolish existing buildings on the Premises and to construct new improvements. The Lease was structured as a triple-net lease to ensure that the Browns would have no expenses related to the Premises over the term of the Lease.[1]

¶3 In November 2005, HTC discovered an apparent easement (the Easement) across the Premises in favor of an adjoining landowner. The Easement was not identified in the Lease as a permitted exception to the Browns' delivery of possession of the Premises to HTC. HTC notified the Browns of the Easement and demanded that the Browns take steps to remove it, claiming that the

Easement's existence was preventing HTC from obtaining financing for its development project. The Browns declined to take any action and informed HTC that they did not believe the Easement was valid.

¶4 In August 2006, HTC sued the Browns, asserting claims for declaratory judgment, breach of contract, and specific performance. The gravamen of HTC's suit was that the Lease required the Browns to provide HTC with possession of the Premises unencumbered by any easements not excepted and that the Browns' failure to take action to remove the Easement upon its discovery constituted a breach of their obligations under the Lease.[2] The Browns brought counterclaims for breach of contract and unlawful detainer, asserting that HTC had acted in bad faith by initiating this litigation and by repeatedly paying the rent late in an attempt to put pressure on the Browns to address the Easement. The Browns characterized HTC's actions as a default of the Lease.

¶5 Both parties sought summary judgment. After a hearing on the parties' dueling motions, the district court dismissed both HTC's lawsuit and the Browns' counterclaim for unlawful detainer. In its May 1, 2007 Findings of Fact, Conclusions of Law, and Order, the district court determined that the Easement was invalid as between the parties; that because the Easement was invalid, there was no basis for HTC's claims; that HTC had the right to challenge the Easement against the adjoining landowner if it so desired but could only do so at no cost to the Browns; and that HTC's late rent payments, while inappropriate, did not constitute a material breach of the Lease. The district court granted HTC leave to amend its complaint to challenge the Easement against the adjoining landowner so long as the amendment required nothing of the Browns beyond the filing of notice that they did not contest the action. The district court also ordered HTC to pay all of the Browns' attorney fees

---

1. A triple-net lease, or net-net-net lease, is a "lease in which the lessee pays all the expenses, including mortgage interest and amortization, leaving the lessor with an amount free of all claims." *Black's Law Dictionary* 908 (8th ed.2004). The Lease further clarified that HTC would "pay all impositions and costs relating to the [Premises] so that the [Browns will have] no

cost or expense relating to the [Premises] during the term or any extension of the lease."

2. There is no suggestion that either party was aware of the Easement at the time the Lease was executed.

and costs related to the action as a remedy for what it concluded was HTC's "[in]appropriate conduct" under the Lease. HTC appeals, and the Browns cross-appeal, from the district court's order.

## ISSUES AND STANDARDS OF REVIEW

¶ 6 HTC argues that the district court erred by concluding that HTC had standing to challenge the Easement against the adjoining landowner, by ruling on the validity of the Easement as between the existing parties, and by interpreting the Lease to place the obligation of challenging the Easement on HTC rather than the Browns. "A district court's summary judgment decision presents a question of law that this court reviews for correctness." *Superior Receivable Servs. v. Pett,* 2008 UT App 225, ¶ 2, 191 P.3d 31. To the extent that HTC's arguments challenge the district court's interpretation of the Lease, these arguments also present legal questions that we review for correctness. *See Richins Drilling, Inc. v. Golf Servs. Group, Inc.,* 2008 UT App 262, ¶ 2, 189 P.3d 1280, *cert. denied,* No. 20080660 (Utah Oct. 15, 2008).

¶ 7 On cross-appeal, the Browns argue that the district court erred in its determination that HTC's actions, including intentionally withholding rent and initiating this unsuccessful litigation, did not constitute a material breach of the Lease. The Browns' cross-appeal of the district court's summary judgment ruling presents questions of law that we review for correctness. *See Superior Receivable Servs.,* 2008 UT App 225, ¶ 2, 191 P.3d 31.

¶ 8 Finally, HTC challenges the district court's award of attorney fees and costs to the Browns, arguing that the Browns' affidavit in support of attorney fees was inadequate and that the district court erred in failing to reduce the fee award in proportion to the parties' relative success in the litigation. We review the district court's calculation of an attorney fees award under an abuse of discretion standard. *See Dixie State Bank v. Bracken,* 764 P.2d 985, 988 (Utah 1988).

## ANALYSIS

### I. HTC's Appeal

¶ 9 We first address HTC's arguments regarding the district court's determination of the validity of the Easement and its rulings on HTC's ability and obligation to challenge the Easement as against the adjoining landowner. Early in its appellate brief, HTC characterizes its appeal as presenting a straightforward question about obligations incurred under the Lease: "Whose obligation is it to take care of an easement discovered after the commencement of a lease?" We agree with HTC that this is the central question presented by its appeal. However, we need not answer that question in abstract terms because here it is apparent that the language of the Lease resolves the question as to these parties.

¶ 10 The Lease is a contract, and in interpreting the Lease we "'first look[ ] to the contract's four corners to determine the parties' intentions, which are controlling.'" *Baxter v. Saunders Outdoor Adver., Inc.,* 2007 UT App 340, ¶ 11, 171 P.3d 469 (alteration in original) (quoting *Fairbourn Commercial, Inc. v. American Hous. Partners, Inc.,* 2004 UT 54, ¶ 10, 94 P.3d 292). In the absence of ambiguity, which no one argues here, we determine the parties' intentions as a matter of law under the plain contractual language. *See id.* In light of the language of the Lease, it is clear that the parties contracted so as to anticipate and resolve the very dispute presented in this appeal.

¶ 11 As previously noted, the Lease was drafted as a triple-net lease to ensure that the Browns incurred no monetary obligations as a result of HTC leasing the Premises. However, the Lease goes further and specifically addresses HTC's ability to challenge legal encumbrances affecting the Premises during the term of the Lease. Article 6.3 of the Lease requires HTC to comply with "Legal Requirements" as defined in the Lease and provides, in part, that HTC "shall have the right, at its own cost and expense, to contest or review by appropriate legal or administrative proceeding the validity or legality of any such Legal Requirement." The Lease defines Legal Requirements to include

"all covenants, restrictions, and conditions now or hereafter of record which may be applicable to [HTC] or to all or any portion of the Premises," even if compliance with such requirements "results in interference with the use or enjoyment of all or any portion of the Premises."

¶ 12 This language clearly indicates that HTC may, independently of the Browns, challenge the validity of the Easement. The Easement, to the extent it may have any validity, is clearly a covenant, restriction, or condition of record that affects both the Premises and HTC's use and enjoyment thereof. As such, HTC is either obligated to comply with the Easement under the terms of the Lease, *or* it may challenge the Easement at its own expense and at no cost to the Browns.

¶ 13 The district court's resolution of HTC's claims comports with the obligations incurred by the parties under the Lease. Because HTC contracted to either abide by restrictions such as the Easement or challenge them itself, the district court properly dismissed HTC's claims alleging that the Browns had breached the Lease by failing to address the Easement. At the same time, the district court allowed HTC to amend its complaint to name the adjoining landowner as a party defendant so long as HTC could do so at negligible cost to the Browns. This resolution enforces the Lease terms as drafted by the parties and comports with the parties' expressed intent that HTC bear all costs and expenses associated with the Lease. Accordingly, we affirm the district court's ruling dismissing HTC's claims.[3]

## II. The Browns' Cross-appeal

¶ 14 On cross-appeal, the Browns challenge the district court's conclusion that HTC did not materially breach the Lease. The Browns argue that HTC's undisputed actions in delaying rent payments and initiating this litigation constitute bad faith and establish HTC's default of the Lease as a matter of law. Again, we look to the language of the Lease and affirm the district court.

■ ¶ 15 The Lease provides that rent was due from HTC to the Browns on the first day of each month. However, the Lease also expressly determines when the late payment of rent would constitute a default. Under the terms of the Lease, the late payment of rent constitutes a default when HTC "shall have failed to pay the [r]ent within fifteen (15) days of when due and such failure shall not have been cured within ten (10) days after receipt of written notice from [the Browns] respecting such overdue [r]ent payment." The Lease also provides for default in the event that HTC fails to perform any term, covenant, or condition of the Lease and then fails to cure its lack of performance within thirty days of notice. Additionally, the Browns characterize HTC's initiation and maintenance of this action as a default under the Lease, arguing that HTC failed to dismiss the action within thirty days of written notice and demand that it do so.

¶ 16 Interpreting the parties' intentions under the plain language of the Lease, *see Baxter v. Saunders Outdoor Adver., Inc.,* 2007 UT App 340, ¶ 11, 171 P.3d 469, we hold that HTC's actions pertaining to the payment of rent fell within the parties' expressed intention to allow a grace period for the late payment of rent. If it was intended that the repeated late payment of rent under the default provision would itself constitute a default, the parties could have so provided in the Lease. They did not. Accordingly, HTC was nominally within its rights under the Lease to withhold rent each month until the tenth day after notice of nonpayment by the Browns. Further, as noted by the district court, HTC's late payments ceased upon demand by the Browns.

■ ¶ 17 Similarly, the Lease does not contemplate default merely because HTC sued the Browns for claims arising out of the Lease. Indeed, the Lease anticipates such litigation by including a reciprocal attorney

---

**3.** We see no need at this time to address HTC's standing concerns, or its argument that the district court erred in addressing the validity of the Easement as between the parties. In light of our determination that HTC may challenge the Easement regardless of its validity, the district court's determination that the Easement is invalid as between the parties is harmless even if it could be characterized as error.

fees clause. That same clause provides the penalty for unsuccessful litigation—the payment of the prevailing party's fees and costs by the losing party.[4] Here, the district court awarded attorney fees and costs to the Browns and expressly noted that such an award remedied the costs incurred by the Browns as a result of HTC's lawsuit. Because HTC's unsuccessful litigation was anticipated and its resulting costs remedied under the terms of the Lease, the district court properly concluded that HTC's initiation of this action did not constitute a material breach of the Lease.[5]

### III. Attorney Fees

¶ 18 Both parties raise arguments as to the attorney fees awarded below, as well as the question of fees on appeal. We first address the district court's award of fees below, and we then turn to the question of fees on appeal.

### A. Attorney Fees Awarded Below

¶ 19 HTC raises two arguments challenging the district court's award of attorney fees below. First, HTC argues that the affidavit the Browns submitted in support of their attorney fees request was insufficient to support an award of fees under rule 73 of the Utah Rules of Civil Procedure. *See* Utah R. Civ. P. 73. Second, HTC argues that the fee award "must be reduced proportionately to account for the degree of success the prevailing party has."[6]

¶ 20 Addressing HTC's proportionality argument first, we see no error in the district court's decision to award the Browns attorney fees for the entirety of the litigation below. *Cf. Dixie State Bank v. Bracken,* 764 P.2d 985, 988 (Utah 1988) ("Calculation of reasonable attorney fees is in the sound discretion of the trial court and will not be overturned in the absence of a showing of a clear abuse of discretion." (citation omitted)). As to HTC's claims pertaining to the Easement, the Browns clearly prevailed and are entitled to fees under the terms of the Lease. HTC characterizes itself as the prevailing party on the Browns' counterclaims because the district court dismissed the Browns' unlawful detainer action and declined to find that HTC's actions constituted a material breach of the Lease. However, HTC does not challenge or address the district court's conclusion that HTC's actions were "not appropriate" under the Lease and that those actions warranted a remedy in the form of paying the Browns their attorney fees and costs. These unchallenged conclusions by the district court, together with the Browns' complete success in defending against HTC's claims, clearly support the district court's decision that the Browns were the overall prevailing party below and are entitled to an award of reasonable attorney fees and costs under the terms of the Lease.

¶ 21 Although we affirm the district court's decision to award the Browns their attorney fees below, we nevertheless agree with HTC that the Browns' affidavit evidencing the amount of those fees is insufficient to allow the district court to have determined the reasonableness of the claimed fees. *See*

---

4. In their appellate brief, the Browns characterize HTC's litigation as "frivolous." However, the Browns neither point to a district court finding that the suit was frivolous nor provide any substantive argument as to why we should treat it as such. Further, the Browns provide no argument as to why the payment of their attorney fees, as ordered by the district court, is not an adequate remedy for the bringing of frivolous, as well as merely unsuccessful, litigation. Accordingly, we do not address whether HTC's suit was frivolous or the effect, if any, if it was.

5. The district court also concluded that HTC's actions were "not appropriate conduct" under the Lease and that the proper remedy for this inappropriate conduct was HTC's payment of the Browns' attorney fees and costs. HTC does not challenge either of these conclusions, and we do not disturb them.

6. The Browns cursorily imply in their reply brief that the district court inappropriately limited its award of attorney fees and costs to them. However, the Browns provide no reasoned argument as to what those limitations were or why they may have been inappropriate. Accordingly, we do not address this issue. *See Smith v. Four Corners Mental Health Ctr., Inc.,* 2003 UT 23, ¶ 46, 70 P.3d 904 (noting that we may decline to review an argument imposing the burden of argument and research on the court); *see also* Utah R.App. P. 24(c) (limiting reply briefs to answering any new matter set forth in the opposing brief).

*generally* Utah R. Civ. P. 73; *Dixie State Bank*, 764 P.2d at 990 (identifying questions to be answered under rule 73, including the total work performed, the necessity of the work, and the reasonableness of counsel's hourly rate); *EDSA/Cloward, LLC v. Klibanoff*, 2008 UT App 284, ¶ 17, 192 P.3d 296 (holding affidavit adequate where it "substantially answer[ed]" the questions identified in *Dixie State Bank*). Although the Browns' affidavit generally listed a number of services provided by their attorneys and identified each attorney's hourly rate, there was no breakdown as to which attorney performed which services, the hours spent on each service, or even the total number of hours expended on the litigation. The Browns' affidavit fails to substantially answer the questions identified in *Dixie State Bank v. Bracken*, 764 P.2d 985 (Utah 1988), and we accordingly reverse the district court's order determining the amount of the fee and cost award and remand this issue for further consideration.

## B. Attorney Fees on Appeal

 ¶ 22 Both parties also request attorney fees incurred on appeal to the extent that today's opinion renders them successful parties below and on appeal. *See generally Valcarce v. Fitzgerald*, 961 P.2d 305, 319 (Utah 1998) ("[W]hen a party who received attorney fees below prevails on appeal, the party is also entitled to fees reasonably incurred on appeal." (internal quotation marks omitted)). For the reasons expressed herein, we award reasonable attorney fees only to the Browns, and only for fees incurred as the appellee and not as the cross-appellant.

 ¶ 23 We first note that there may be situations where an appeal and cross-appeal raise such interrelated issues that it is proper to evaluate prevailing party status based on the overall result of the appeal and cross-appeal. *See, e.g., Stonecreek Landscaping, LLC v. Bell*, 2008 UT App 144U, para. 15, 2008 WL 1822192 (mem.) (determin-

ing, where the parties raised related issues on appeal and cross-appeal, that there was no prevailing party in light of the appellate court's "across the board" affirmance of the trial court). This is not the case here, where the appeal and cross-appeal address different issues arising from entirely different claims below. Accordingly, we treat the appeal and cross-appeal separately for purposes of determining the parties' entitlement to attorney fees on appeal. *Cf. ProMax Dev. Corp. v. Raile*, 2000 UT 4, ¶ 32, 998 P.2d 254 (awarding fees to a prevailing appellee in part but denying fees incurred by the appellee in pursuing an unsuccessful motion to dismiss).

¶ 24 As to the issues raised in HTC's appeal, we award reasonable appellate attorney fees to the Browns. The district court awarded fees to the Browns on HTC's failed claims, and the Browns have substantially prevailed against HTC's appeal of those claims. Accordingly, despite our remand for further consideration of the amount of the Browns' attorney fees award below, the Browns are entitled to an award of reasonable attorney fees incurred in defending against HTC's appeal. *Cf. id.* (awarding statutorily allowed attorney fees to "a party which successfully defends an appeal"); *Pack v. Case*, 2001 UT App 232, ¶¶ 39–41, 30 P.3d 436 (awarding attorney fees to appellee who "prevailed on the majority of issues on appeal, including the most substantial issue").

 ¶ 25 As to the separate and independent issues raised in the Browns' cross-appeal, we determine that neither party is entitled to an award of attorney fees. The Browns are not entitled to an award of fees because, although they were awarded fees below,[7] they have not prevailed on their cross-appeal. *See Valcarce*, 961 P.2d at 319; *see also ProMax Dev. Corp.*, 2000 UT 4, ¶ 32, 998 P.2d 254 (denying fees for unsuccessful motion to dismiss despite award of fees for prevailing on remainder of appeal). Conversely, HTC is not entitled to an award of

---

7. We further note that, to the extent the district court awarded the Browns attorney fees as breach of contract damages rather than under the Lease's fee provision, the Browns provide no authority for the proposition that such damages constitute "receiv[ing] attorney fees below" for purposes of an award of fees on appeal. *See Valcarce v. Fitzgerald*, 961 P.2d 305, 319 (Utah 1998). We need not address this issue today in light of the Browns' lack of success in prosecuting their cross-appeal.

fees for successfully defending against the Browns' cross-appeal because HTC did not "receive[ ] attorney fees below" on the Browns' counterclaims, *see Valcarce,* 961 P.2d at 319, and, as explained above, we have affirmed the district court's award of fees to the Browns below. An award of fees on appeal requires both a fee award below and success in the appellate court. *See id.* Because neither party completely satisfies the test for an award of attorney fees arising out of the Browns' cross-appeal, neither party is entitled to an award of such fees.

## CONCLUSION

¶ 26 We conclude that the trial court properly dismissed both HTC's claims and the Browns' counterclaim for unlawful detainer and properly determined that HTC had not materially breached the Lease. Thus, we affirm the district court on those issues. We also affirm the district court's decision to award attorney fees to the Browns below, but we reverse the district court's determination of the amount of those fees due to the insufficiency of the Browns' rule 73 affidavit. Finally, we award the Browns their reasonable attorney fees incurred in successfully defending against HTC's appeal but decline to award fees to either party in regards to the Browns' cross-appeal. The matter is remanded to the district court for further proceedings consistent with this opinion.

¶ 27 WE CONCUR: RUSSELL W. BENCH and CAROLYN B. McHUGH, Judges.